### 30570. COURSIN v. HARPER et al. *

GUNTER, Justice.

This appeal by Mrs. Coursin is from a judgment that dismissed her proceedings on garnishment in attachment. Code Ann. Ch. 8-5.

On June 30, 1975, Mrs. Coursin's attorney made an affidavit before a deputy clerk of Muscogee County Superior Court in which he said that he was the agent for Mrs. Coursin and that "to the best of his knowledge and belief says that Everett Lynn Harper, Jr. is indebted to her, Stephanie P. Harper Coursin, in the sum of $19,800...; the deponent further swears that the said Defendant resides without the limits of the State." A bond with security was also executed for Mrs. Coursin by her agent in the presence of the deputy clerk. The deputy clerk then

---

*Note: For further report of this case, see p. 854, post.

issued a writ of attachment which also required the sheriff to serve any summons of garnishment that might be placed in his hands. This writ was issued June 30, 1975.

A summons of garnishment was then issued by the deputy clerk on June 30, 1975, directed to the United States of America as garnishee. In addition to requiring the garnishee to respond with respect to its indebtedness to the defendant, the summons contained this language: "This attachment is based upon a judgment of final divorce ordering the payment of child support by the defendant. No deductions by the garnishee are allowed. Defendant is currently receiving monies from the United States of America under the definition of Pub. Law 93-647; 42 USC 659." The summons was served upon the United States on July 3, 1975, and on the same date the United States mailed a notice to the defendant at his address in South Carolina advising him of the service of the summons upon the United States and enclosing a copy of the summons for him.

On August 6, 1975, the defendant, the alleged judgment debtor, filed pleadings in the attachment-garnishment action as he was authorized to do pursuant to Code Ann. §§ 81A-181, 81A-124 (a). His first defense contended that the plaintiff's attachment-garnishment action failed to state a claim against him for which relief could be granted, and his fourth defense was a specific denial of any indebtedness by him to the plaintiff, "in that Defendant has not defaulted with respect to any payment due the Plaintiff."

The garnishee thereafter answered the garnishment and paid certain funds due the defendant into the registry of the court.

On August 22, 1975, the defendant amended his pleadings by adding a sixth defense: "The attachment is based upon a foreign judgment rendered in 1969, and, hence, has not been brought within the prescribed statutory period for suits on foreign judgments." Code Ann. § 3-701 provides: "All suits upon judgments obtained out of this state shall be brought within five years after such judgments shall have been obtained."

On October 1, 1975, the trial judge entered a

judgment that dismissed the plaintiff's attachment and garnishment. One of the grounds for the dismissal of the action was that the making of an affidavit before the clerk of court by plaintiff's attorney and the issuance of a summons of garnishment based on that affidavit was an unconstitutional procedure.

The plaintiff has appealed, and we affirm the judgment below.

First, it must be made clear that this case is controlled by Georgia statutes in effect prior to July 1, 1975, because the affidavit was made and the summons was issued on June 30, 1975. Georgia's new garnishment procedure became effective one day later, July 1, 1975. Ga. L. 1975, pp. 1291 et seq. The new procedure provides for judicial supervision over the issuance of a process of garnishment. The affidavit must be made before a judicial officer, and the affidavit must set out the facts upon which the garnishment is claimed and upon which the apprehension of loss is based if the process of garnishment is not issued. The new procedure provides for service of the summons upon the defendant-debtor as well as the garnishee. The new procedure also *specifically* provides for a post-seizure hearing for dissolution of the garnishment. The old procedure, in effect prior to July 1, 1975, had provided for a post-seizure dissolution hearing only by intervention. Code Ann. §§ 81A-181, 81A-124 (a).

In a pre-judgment garnishment case, North Georgia Finishing, Inc. v. Di-Chem, Inc., 419 U. S. 601 (1975), the Supreme Court of the United States reversed a judgment of this court and, as we interpreted the majority, concurring, and dissenting opinions, held our old garnishment procedure, both pre-judgment and post-judgment, unconstitutional on procedural due process grounds. Upon receipt of the mandate from the United States Supreme Court, we then entered the following judgment: "This case has been remanded to this court by the Supreme Court of the United States. That court has held that Georgia's garnishment statute is unconstitutional. Therefore, the judgment in this case is reversed." 233 Ga. 793 (214 SE2d 667) (1975).

The majority opinion, authored by Mr. Justice White, seemed to us to have invalidated Georgia's

statutory scheme on due process grounds because of the "totality of the deficiencies" in our procedure. Distinguishing our procedure from that of Louisiana which was upheld in Mitchell v. W. T. Grant Co., 416 U. S. 600 (1974), Mr. Justice White said: "The Georgia garnishment statute has none of the saving characteristics of the Louisiana statute. The writ of garnishment is issuable on the affidavit of the creditor or his attorney, and the latter need not have personal knowledge of the facts. . . The affidavit . . . need contain only conclusory allegations. The writ is issuable . . . by the court clerk, without participation by a judge. Upon service of the writ, the debtor is deprived of the use of his property in the hands of the garnishee. Here a sizeable bank account was frozen, and the only method discernible on the face of the statute to dissolve the garnishment was to file a bond to protect the plaintiff creditor. There is no provision for an early hearing at which the creditor would be required to demonstrate at least probable cause for the garnishment. Indeed, it would appear that without the filing of a bond the defendant-debtor's challenge to the garnishment will not be entertained, whatever the grounds may be."

Mr. Justice Powell said in his concurring opinion: "Nor do I find it necessary to relegate Mitchell to its narrow factual setting in order to determine that the Georgia garnishment statutes fail to satisfy the requirements of procedural due process."

Mr. Justice Blackmun said in his dissenting opinion that the majority had stricken "down the Georgia statutory structure as offensive of due process."

Although this court thought and still thinks that Mr. Justice White and Mr. Justice Powell were in error in determining that Georgia's old procedure did not provide for a post-seizure hearing that would enable an alleged debtor to rather promptly secure the dissolution of a mistaken or illegal garnishment, we nevertheless concluded that the totality of the deficiencies enunciated by six members of the United States Supreme Court invalidated Georgia's procedure in both pre-judgment and post-judgment cases.

Additionally, we can see very little difference

between pre-judgment and post-judgment garnishment proceedings insofar as procedural due process of law is concerned. The case at bar shows rather clearly that an alleged judgment debtor must be afforded due process just as a non-judgment debtor must be afforded due process. Judicial supervision over a proposed temporary deprivation of property, and notice and an opportunity for an early preliminary hearing after the deprivation are necessary to guard against mistaken and illegal deprivations of property. And this is true even when the victim of the deprivation is an alleged judgment debtor. The mere fact that a creditor has obtained a judgment does not give him a right to enforce that judgment by depriving the alleged judgment debtor of his property without due process of law. Some judgments are procured many years in advance of their attempted enforcement; there are instances of partial payments on judgments; there are installment judgments, especially in the alimony field; there are judgments that were procured illegally; and there are judgments which have expired and are unenforceable.

We concluded, and we now state plainly, that alleged judgment debtors must be accorded due process in the enforcement of judgments if enforcement with the aid of the state effects a deprivation of property.

The alleged judgment debtor in this case, the judgment having been procured in another state, was deprived of his funds in the hands of the garnishee from July 3, 1975 to the present time. Appellant's brief states that said funds remain in the registry of the trial court pending this appeal. This deprivation was initiated without judicial supervision, and as we read Mitchell v. W. T. Grant Co., supra; North Georgia Finishing v. Di-Chem, supra; and Carey v. Sugar, 423 U. S. 814 (96 SC 1208, 46 LE2d 587), even a temporary deprivation without initial judicial supervision cannot pass constitutional muster.

It follows that Georgia's procedure for pre-judgment and post-judgment garnishment, as that procedure existed prior to July 1, 1975, failed to provide due process and was unconstitutional.

*Judgment affirmed. All the Justices concur, except*

*Hall, J., who dissents.*

ARGUED JANUARY 12, 1976 — DECIDED APRIL 28, 1976.

*Araguel & Sanders, Jerry D. Sanders,* for appellant.
*Keil, Riley & Davis, E. Wright Davis, Jr.,* for appellees.

HALL, Justice, dissenting.

In my opinion, the Supreme Court's decision in North Georgia Finishing v. Di-Chem, Inc., 419 U. S. 601 (95 SC 719, 42 LE2d 751) (1975) invalidated only Georgia's then existing prejudgment garnishment proceedings. That leaves for our decision the constitutionality of postjudgment garnishment. After careful analysis of Supreme Court decisions, I find nothing which would compel the conclusion that these statutes are unconstitutional, and I find much which indicates that the Court's concerns which resulted in its voiding various prejudgment summary relief procedures for creditors are totally distinct from and do not govern the postjudgment garnishment situation. I therefore dissent.

The majority opinion states that "an alleged judgment debtor must be afforded due process just as a non-judgment debtor must be afforded due process," and "we now state plainly, that alleged judgment debtors must be awarded due process in the enforcement of judgments. . ." This has been the law for at least 61 years. See Coe v. Armour Fertilizer Works, 237 U. S. 413 (1915).

The majority's pontifications are offered as if they were brand-new and somehow answered the question presented in this case. Actually they are mere restatements of the obvious, and they serve only to beg the question. Of *course,* judgment debtors are entitled to due process! The hard question—the question the majority never exert themselves to deal with—is what does due process require be done in a postjudgment garnishment situation, and what, if anything, distinguishes the postjudgment situation from the prejudgment garnishments which have been struck down by the Supreme Court? The majority opinion ducks these hard

questions with two facile and, I think, totally erroneous conclusions: One, that the Supreme Court's Di-Chem opinion ruled unconstitutional the Georgia postjudgment as well as prejudgment garnishment proceedings; and two, in the majority's words, "we can see very little difference between prejudgment and postjudgment garnishment proceedings as far as procedural due process of law is concerned." I submit that anyone who cannot see a big difference has not looked very hard.

A primary invalidating characteristic of those prejudgment actions which have been struck down is that they allowed seizure of a debtor's property with no opportunity for the debtor to obtain a prompt hearing on the merits of the creditor's underlying claim—whether it be for a debt owed, or installment payments due, or whatever. In the postjudgment situation, a full adversary process has been afforded the debtor; and the creditor, having prevailed at law, has been awarded a solemn judgment. The threat that onerous possessory actions may be instituted on the basis of spurious claims is wholly eliminated; and this, I think, dramatically distinguishes the postjudgment garnishment situation. A review of the pertinent decisions bears out this analysis.

The seminal case in the field, Sniadach v. Family Finance Corp., 395 U. S. 337 (89 SC 1820, 23 LE2d 349) (1969) struck down the Wisconsin prejudgment garnishment of wages. The court was concerned that under this scheme severe economic hardships could be imposed upon a debtor before there had ever been any adjudication of the merits of the creditor's underlying claim: "they [the wages] may, it is true, be unfrozen [i.e., released from garnishment] if the trial of the main suit is ever had and the wage earner wins on the merits. But in the interim the wage earner is deprived of his enjoyment of earned wages without any opportunity to be heard and to tender any defense he may have, whether it be fraud or otherwise." 395 U. S. 339. Mr. Justice Harlan's concurring opinion in that case emphasized that in his opinion "due process is afforded only by the kinds of 'notice' and 'hearing' which are aimed at establishing the validity, or at least the probable validity, of the underlying claim against the alleged debtor *before* he can be deprived of his

property or its unrestricted use. I think this is the thrust of the past cases in this court. [Cits.]" 394 U. S. 343.

Mr. Justice Harlan's language, set forth above, emphasizing the importance of establishing the probable validity of the underlying claim, was quoted by the court in the summarizing last words of Fuentes v. Shevin, 407 U. S. 67 (92 SC 1983, 32 LE2d 556) (1972), a decision in which the prejudgment replevin of consumer goods was ruled violative of due process precisely because seizure was effected under the challenged statute without a prior adjudication that there was, or was likely to be, any merit at all to the underlying claim for repossession. The statute's flaw was that "there is no requirement that the applicant make a convincing showing before the seizure that the goods are, in fact, 'wrongfully detained.' " 407 U. S. 73-74. Accord, id. pp. 83, 93, 96 n. 32, 97. Once again, as in Sniadach, it was primarily the absence of any preseizure showing on the merits which invalidated the procedure.

The third prejudgment seizure decision emphasizing again the constitutional importance of some prompt showing on the merits of the claim which is the basis of the seizure, was Mitchell v. W. T. Grant Co., 416 U. S. 600 (94 SC 1895, 40 LE2d 406) (1974). That decision upheld the Louisiana sequestration procedure concerning encumbered property, where prior to the seizure the creditor was required to set forth entitling facts under oath and "the statute entitles the debtor immediately to seek dissolution of the writ, which must be ordered unless the creditor 'proves the grounds upon which the writ was issued,' Art. 3506, the existence of the debt, lien, and delinquency, failing which the court may order return of the property and assess damages in favor of the debtor, including attorney's fees." 416 U. S. 606. The Court wrote that "we think it comports with due process to permit the initial seizure on sworn ex parte documents, followed by the early opportunity to put the creditor to his proof." 416 U. S. 609. The Court in Mitchell introduced a balancing test between the interests of debtor and creditor, allowing a prompt postseizure hearing to suffice, thus undercutting the import of Fuentes that preseizure hearing was always required save in exceptional

circumstances. See also Note, 70 Nw. U. L. Rev. 331, 338 (1975).

In North Georgia Finishing, Inc. v. Di-Chem, Inc., supra, the Supreme Court in 1975 struck down Georgia's statutory scheme for prejudgment garnishment, under which North Georgia Finishing's corporate bank account was seized. Once more, a prime flaw in the statute was perceived to be the absence of any speedy assessment of the probable merit of the underlying claim: "Here, a bank account . . . was impounded and . . . put totally beyond use *during the pendency of the litigation on the alleged debt. . ."* 419 U. S. 606. "There is no provision for an early hearing at which the creditor would be required to demonstrate at least *probable cause* for the garnishment." Id., p. 607. (Emphasis supplied.) Naturally, these concerns are totally absent in the postjudgment garnishment situation, because the "alleged" debt has been turned into a judgment debt *after* the debtor had his day in court—a fact which should put to rest any claim that this opinion invalidated Georgia's postjudgment, as well as prejudgment, garnishment.

Finally, in March of this year the Supreme Court decided Carey v. Sugar, 423 U. S. 814 (96 SC 1208, 47 LE2d 587), (1976) involving New York's prejudgment attachment statute. The court remanded the case to a three-judge federal court with directions to abstain from deciding the federal constitutional question (the debtor's alleged claim under 42 USC § 1983) until New York law could be construed by New York courts. The court emphasized that the statute might survive if the state courts put on it a gloss requiring "an opportunity for a preliminary hearing on the merits of a plaintiff's underlying claim," (47 LE2d 591), *after* attachment, on a motion to vacate that attachment.

This brief summary of the United States Supreme Court's five pronouncements in the area of prejudgment seizures is not meant to suggest that the sole disqualifying characteristic of the statutes which fell was the absence of an early hearing on the probable validity of the underlying claim. But each statute which was invalidated had that characteristic, and the court emphasized that egregious unfairness. Those cases must

be read to mean that this characteristic is a primary flaw in summary creditor actions, and may well have been the precipitating factor in the court's rulings of unconstitutionality. Naturally, the merit of the underlying claim is exactly what has already been fully adjudicated—and decided against the debtor—in cases in which postjudgment garnishment is sought. Thus, the concerns expressed in Sniadach, Fuentes, Mitchell, North Georgia Finishing and Carey v. Sugar do not translate whole into the postjudgment field. In short, all we can conclude from these cases about the likely fate of postjudgment garnishment statutes is that some sort of postseizure[1] hearing will probably be required at which time the debtor may put forth what defenses to the seizure he may have—whether prior payment, statute of limitation, mistaken identity or whatever. These five cases can certainly teach something about the kinds of considerations which are pertinent in weighing postjudgment garnishment statutes; but they certainly may not be read as "ruling" on postjudgment statutes, either expressly or impliedly. Indeed, the area of due process in postjudgment seizure is sufficiently different that commentators in the main do not even address that question at all in analyzing these cases. See, e.g., Hansford, N., Procedural Due Process in the Debtor-Creditor Relationship: The Impact of Di-Chem, 9 Ga. L. Rev. 589 (1975); Note, 1975 Wis. L. Rev. 860 (1975); Note, 70 Nw. U. L. Rev. 331 (1975); Note, 28 Vand. L. Rev. 908 (1975); Note, 63 Geo. L. J. 1337 (1975).

---

[1] I note that a preseizure hearing is not even required where the seizure is prejudgment. "The usual rule has been '[w]here only property rights are involved, mere postponement of the judicial inquiry is not a denial of due process, if the opportunity given for ultimate judicial determination of liability is adequate.' [Cit.]" Mitchell v. W. T. Grant Co., supra, 416 U. S. 611. "Pregarnishment notice and prior hearing have not been constitutionally mandated in the past. Despite the ambiguity engendered by the court's reliance on Fuentes, I do not interpret its opinion today as imposing these requirements for the future." North Georgia Finishing, Inc. v. Di-Chem, Inc.,

The trial court's order in this case, in pertinent part, ruled this garnishment in attachment unconstitutional because the affidavit was not made before a *judicial* officer. The majority opinion agrees that "even a temporary [and postjudgment] deprivation without initial judicial supervision cannot pass constitutional muster." My review of the cases convinces me that nothing therein said compels this conclusion in a postjudgment garnishment case, and under my

---

supra, 419 U. S. 611. (Powell, J., concurring). "Although the North Georgia opinion relies on Fuentes, the court has not embraced the broad holding that due process always requires notice and a hearing prior to issuance of a writ of garnishment. The court's analysis in North Georgia suggests that statutes accommodating the interests of the creditor and the debtor by providing for a hearing soon after issuance of the writ and creating other debtor safeguards will satisfy the requirements of due process. Thus, the court appears prepared to abandon the prerequisite suggested in Mitchell that the creditor possess a prior interest in the property before a court properly may consider his interests in its due process analysis." Note, 63 Geo. L. J. 1337, 1347 (1975). "The 'retreat' from the Fuentes preseizure requirements is not explicitly stated [in North Ga. Finishing v. Di-Chem] and is further obscured by the Court's citation of Fuentes for the proposition that fundamental due process does not vary among types of property. Nevertheless, the retreat occurred. Fuentes purported to establish an unyielding requirement of preseizure notice and hearing. Mitchell carved out an exception when the creditor has a concurrent interest in the property and alternative safeguards are provided. Di-Chem appears to have eliminated the requirement of competing interests in the property and requires only adequate alternative safeguards where prior notice and hearing are not given. This analysis calls into question the correctness of Justice Stewart's conclusion in his concurring opinion that the demise of Fuentes has been greatly exaggerated." Hansford, supra, 9 Ga. L. Rev. 589, 606-607 (1975).

understanding of governing principles that conclusion is wrong. When a judgment has been obtained and collection on the judgment is sought, I see absolutely no reason why fairness should be thought to require a judicial officer to oversee the initiation of proceedings. I think future Supreme Court decisions will show the majority's result—with its intimations of unconstitutionality of other postjudgment collection procedures which are not now before us—to have been wholly unnecessary.