HANNER *v.* DeMARCUS ET UX.

No. 497.   Argued March 28, 1968.—Decided April 29, 1968.

*Philip M. Haggerty* argued the cause for petitioner. With him on the briefs was *Raymond R. Wein.*

*N. Pike Johnson, Jr.,* argued the cause for respondents. On the brief was *Robert John Walton.*

PER CURIAM.

The writ of certiorari is dismissed as improvidently granted.

MR. JUSTICE DOUGLAS, with whom THE CHIEF JUSTICE and MR. JUSTICE BLACK concur, dissenting.

Respondent was appointed Special Master in an Arizona divorce proceeding where petitioner, Josephine Hanner, was defendant.   The divorce court ordered petitioner to pay respondent's $5,072.10 Special Master's fee. Respondent obtained a writ of execution and levied on certain real property of petitioner, which respondent purchased at the execution sale for the amount of judgment, later acquiring a sheriff's deed.   The only notice of the execution and judicial sale was by newspaper publication and public posting.   Three years after the execution, respondent commenced a quiet-title action in Arizona court.   Petitioner pleaded as an affirmative defense that the execution and deed were "null and void and of no effect" because neither respondent nor the sheriff gave her actual notice of the execution and judicial sale, although respondent knew her address and that of her attorney in the divorce action.   Respondent was granted summary judgment, and, on appeal to the Arizona Supreme Court, petitioner urged that because no

actual notice was given her, the procedure for execution violated the Due Process Clause of the Fourteenth Amendment. Petitioner urged the State Supreme Court to construe Rule 53 (a) of the Arizona Rules of Civil Procedure, concerning Master's fees, to require actual notice to the debtor of execution, in order to avoid the constitutional problem. That court, however, held that Rule 53 (a) did not require notice of execution, but merely of the underlying debt, and concluded that the procedure did not deny due process.

In her petition for writ of certiorari, Mrs. Hanner urged that the failure to give her actual notice of the execution prejudiced her in three respects: (1) she was unable to invoke her privilege under state law, Ariz. Rev. Stat. Ann. § 12–1562, to specify which property the sheriff should seize to satisfy the debt; (2) she was unable to demand that the sheriff comply with Ariz. Rev. Stat. Ann. § 12–1553, providing that execution be levied on personal property rather than realty, where the personalty is sufficient to satisfy the judgment; and (3) respondent was enabled to acquire for less than $5,100 land which he in the divorce case had valued at $20,000 and which petitioner values at $40,000, because petitioner, not knowing of the judicial sale, was unable to protect her interests.

In his brief opposing certiorari, respondent argued that the only federal question presented, whether actual notice to the judgment debtor of execution and judicial sale was required by procedural due process, had been decided in *Endicott Johnson Corp.* v. *Encyclopedia Press,* 266 U. S. 285, which held that notice of the underlying debt sufficed. We granted certiorari to determine whether *Endicott* should be overruled. 389 U. S. 926.

In his brief on the merits, respondent changed position and argued that the *Endicott* question was not properly before this Court. Sections 12–1562 and 12–1553 of the

Arizona Statutes, he claims, do in fact require that the debtor be given actual notice. It is urged that by failing to invoke these sections but instead arguing that Rule 53 (a) was unconstitutional unless construed to require actual notice petitioner bypassed state grounds which might have entitled her to relief.

Section 12–1553 provides that the writ of execution shall require the officer to satisfy a judgment against the property of the debtor "out of the personal property of the debtor, and if sufficient personal property cannot be found, then out of his real property. . . ." Section 12–1562B provides: "A judgment debtor may point out to the levying officer the property he desires to be levied on, and if the officer deems it sufficient to satisfy the execution, he shall make levy on no other property."

In *Blasingame* v. *Wallace,* 32 Ariz. 580, 261 P. 42, the Arizona Supreme Court held these provisions were "not mandatory" but that the judicial sale "may be set aside where it is shown that the judgment debtor had sufficient personal property which could have been applied upon the judgment, and that the officer knew it, or by the exercise of reasonable diligence could have discovered it, and failed to levy upon it, but instead levied upon and sold for the amount of the judgment real property worth many times that sum." *Id.,* at 586, 261 P., at 44.

We do not know precisely what petitioner argued in the Supreme Court of Arizona because the briefs of the parties in that court have not been made part of the record here. It appears, however, from the sketchy record that is before us that she did make timely objection that the sheriff did not consult with her respecting the property upon which he would levy. In her affidavit opposing summary judgment petitioner made two separate and distinct arguments regarding notice. The first states: "Affiants allege that at no time did . . . these

affiants receive any *notice* from the said Cecil DeMarcus or his agents or his attorney as required by Rule 53 (A) Rules of Civil Procedure for the Superior Courts of the State of Arizona, which is a material issue of fact as to whether the *notice* required by said Rule 53 (A) was given to these defendants by the plaintiff." (Emphasis in original.)

In the next paragraph of the affidavit petitioner made a different allegation respecting notice: "Affiants further allege that at no time did they receive any Notice from the Sheriff of Maricopa County, State of Arizona as to any execution issued out of the above entitled Court and did not receive any notice as to any Sheriff's sale of said Lots . . . ." Since petitioner's position was that Rule 53 (a), relating to special masters, required the *Master* to give notice, the allegations respecting failure of the sheriff to give notice could only be relevant under the State's *Blasingame* doctrine. The fact that this affidavit was before the State Supreme Court, coupled with respondent's concession that petitioner argued there that if actual notice were not provided for due process would be violated, compels the conclusion that for purposes of this Court's review of federal questions petitioner adequately presented to the Arizona courts the issue of the applicability of *Blasingame,* even though she may not have cited that case or §§ 12–1553 and 12–1562 until her petition for rehearing. Moreover, this Court will not decline to decide a constitutional question simply because of a State's technicalities respecting briefing and pleading. See *NAACP* v. *Alabama,* 377 U. S. 288; *Wright* v. *Georgia,* 373 U. S. 284; *Staub* v. *City of Baxley,* 355 U. S. 313, 318.

When the judgment below is viewed as holding by necessity that *Blasingame* does not entitle petitioner to relief, it is unquestionable that the Arizona Supreme Court has held constitutional a procedure for execution

of judgment and judicial sale in which the debtor receives no actual notice of these proceedings.[1] With all due respect, only a Baron Parke[2] would say that the federal question respecting notice had not been raised and therefore that the writ should be dismissed as improvidently granted.

The propriety of overruling *Endicott Johnson Corp.* v. *Encyclopedia Press, supra,* is therefore squarely presented.

*Endicott* was decided in 1924, and its holding that due process does not require notifying a judgment debtor of execution on his property has never been reaffirmed by this Court. Significantly, the Court in *Endicott* did not hold that absence of any notice at all was permissible, but rather that the judgment debtor, having had his day in court and being aware of the judgment against him, is expected to know that execution may follow.

---

[1] Rule 53 (a) provides in relevant part: "[W]hen the party ordered to pay the compensation allowed by the court [to a Master] does not pay it after notice and within the time prescribed by the court, the master is entitled to a writ of execution against the delinquent party." The Arizona Supreme Court held: "A cursory reading of the rule makes it evident that the word 'notice' refers to a notice to the debtor of his obligation and that the rule does not then further require a notice of an intent to execute, once notification of the judgment is properly given. Therefore whether or not [petitioner] had actual notice of the intended execution is immaterial . . . . Rule 53 (a) . . . is clear in its terms. If the compensation is not paid, the rule provides a means by which payment may be secured. We disagree with defendant's contention that this method is either vague or lacking in the protections guaranteed by the due process clauses of either the Arizona or Federal Constitutions." *Knight* v. *DeMarcus,* 102 Ariz. 105, 107–108, 425 P. 2d 837, 839–840.

[2] Sir James Parke served on England's bench from 1828–1855. "His fault was an almost superstitious reverence for the dark technicalities of special pleading." 15 Dictionary of National Biography 226.

Since the *Endicott* decision, there has been not only an expansion of the scope of the notice requirement itself (*e. g., Armstrong* v. *Manzo,* 380 U. S. 545 (adoption); *Lambert* v. *California,* 355 U. S. 225 (felon's duty to register); *Covey* v. *Town of Somers,* 351 U. S. 141 (property tax foreclosure)),[3] but a new approach to the constitutional sufficiency of the *means* of giving notice in particular types of cases. *Mullane* v. *Central Hanover Tr. Co.,* 339 U. S. 306; *Walker* v. *Hutchinson City,* 352 U. S. 112; *Schroeder* v. *City of New York,* 371 U. S. 208. "The means employed must be such as one desirous of actually informing the [opposing party] might reasonably adopt to accomplish it." *Mullane* v. *Central Hanover Tr. Co.,* 339 U. S., at 315.

The *Endicott* rationale that a party who has litigated a case and had a judgment taken against him is deemed, for purposes of due process, to be on notice of further proceedings in the same action was rejected in *Griffin* v. *Griffin,* 327 U. S. 220. There the wife won a divorce from her husband in 1926 and an award of $3,000 per year alimony. In 1938, without notifying her ex-husband, the debtor, she obtained a judgment for alimony arrears and a writ of execution. Under the applicable New York law, the husband could have defeated liability for the accrued arrearage by proof, for example, that the wife had remarried or of change of circumstances, such as comparative financial status, warranting retroactive modification of the alimony award.

We held failure to give actual notice to the husband of the 1938 proceedings violated due process, saying: "While

---

[3] "Engrained in our concept of due process is the requirement of notice. Notice is sometimes essential so that the citizen has the chance to defend charges. Notice is required before property interests are disturbed, before assessments are made, before penalties are assessed. Notice is required in a myriad of situations where a penalty or forfeiture might be suffered for mere failure to act." *Lambert* v. *California,* 355 U. S. 225, 228.

it is undoubtedly true that the 1926 decree, taken with the New York practice on the subject, gave petitioner notice at the time of its entry that further proceedings might be taken to docket in judgment form the obligation to pay installments accruing under the decree, we find in this no ground for saying that due process does not require further notice of the time and place of such further proceedings, inasmuch as they undertook substantially to affect his rights in ways in which the 1926 decree did not." *Id.,* at 229.

Does not *Griffin* point the way to the demands of due process in the instant case? The further proceedings in Mrs. Hanner's case—execution and judicial sale—certainly "undertook substantially to affect [her] rights." In *Griffin* substantial property rights were at stake at further proceedings because state law entitled the debtor to reduce his debt on proof of changed circumstances; in the instant case substantial property rights were at stake because state law gave the debtor the right to select the property to be levied on and to effectively prevent respondent from seizing property worth $20,000 or $40,000 for a $5,072.10 judgment. Is there any more reason to accept in this case the *Endicott* fiction of constructive notice because of knowledge of the underlying judgment than there was in *Griffin?*

We should face the question whether in light of our recent decisions *Endicott* should be overruled.

Mr. Justice Brennan, dissenting.

I agree with my Brother Douglas, for the reasons stated in his dissenting opinion, that the federal question respecting notice was raised and therefore that we have the duty to decide whether *Endicott Johnson Corp.* v. *Encyclopedia Press,* 266 U. S. 285, should be overruled. In my view the situation in this case is indistinguishable from that in *Endicott*—both involve money

judgments and present the identical question whether actual notice to the judgment debtor of execution and judicial sale was required by procedural due process. In that circumstance the judgment before us cannot be reversed without overruling *Endicott*. Since the Court refuses to consider whether *Endicott* should be overruled, I see no alternative but to vote to affirm on its authority.