**Cynthia McCAHEY, Plaintiff-Appellant,**

v.

**L.P. INVESTORS, Allen M. Rosenthal, Affiliated Credit Adjusters, Sheriff of Suffolk County, Suffolk County Clerk, Defendants-Appellees.**

No. 1126, Docket 85–7111.

United States Court of Appeals, Second Circuit.

Argued May 6, 1985.

Decided Sept. 30, 1985.

Steven Racow, Bay Shore, N.Y. (Leonard S. Clark, Nassau/Suffolk Law Services Committee, Inc., Bay Shore, N.Y., of counsel) for plaintiff-appellant.

James L. Fischer, New York City (Thomas W. Hyland, Edward A. Taylor, Wilson, Elser, Moskowitz, Edelman & Dicker, New York City, of counsel) for defendant-appellee Allen M. Rosenthal.

Peter L. Contini, Garden City, N.Y. (L'Abbate & Balkan, Garden City, N.Y., of counsel) for defendant-appellee Affiliated Credit Adjusters.

Martin Bradley Ashare, Suffolk Co. Atty., Happauge, N.Y. (Derrick J. Robinson, Asst. Co. Atty., Happauge, N.Y., of counsel) for defendant-appellee Sheriff of Suffolk County, Suffolk County Clerk.

Before MESKILL, KEARSE and WINTER, Circuit Judges.

WINTER, Circuit Judge:

The plaintiff, Cynthia McCahey, appeals from Judge Platt's dismissal of her complaint for failure to state a claim, Fed.R. Civ.P. 12(b)(6). McCahey seeks injunctive, declaratory, and monetary relief on the grounds that New York's post-judgment remedies deprived her of property without due process. We affirm.

### BACKGROUND

1. *The Underlying Dispute*

Because the complaint was dismissed for failure to state a claim, we accept its allegations as true. *Gardener v. Toilet Goods Association,* 387 U.S. 167, 172, 87 S.Ct. 1526, 1529, 18 L.Ed.2d 704 (1967).

According to the complaint, McCahey is a single mother of three children. She and her family are dependent for support on the Aid to Families with Dependent Children program ("AFDC"). On October 13, 1982, L.P. Investors obtained a default judgment against McCahey for unpaid rent in the amount of $1,979.61. McCahey had notice of the proceeding but did not appear. She does not contest the validity of the judgment.

To collect the judgment, L.P. Investors hired a collection agency, Affiliated Credit Adjusters, which in turn hired an attorney, Allen Rosenthal. On June 14, 1983, Rosenthal telephoned McCahey and asked her to pay the judgment. McCahey refused, explaining that she did not have sufficient funds and was wholly dependent on AFDC. As evidence of her dependent status, she told Rosenthal her public assistance case number.

Rosenthal ascertained that McCahey had a checking account at the Island State Bank. The sole source of funds for the account was AFDC. On July 6, the bank received a restraining notice from Rosenthal directing it to stop all payments on the account. Shortly after July 12, McCahey received a letter from the bank informing her that her account had been restrained. The bank charged her $10 for this notice. Soon thereafter, McCahey called the bank and informed a bank employee that her account consisted entirely of welfare money. The bank employee told McCahey that welfare money was exempt from seizure and promised to contact Rosenthal. About July 18, the bank employee informed McCahey that Rosenthal did not believe the account contained only welfare money. The employee also informed McCahey that the bank would nevertheless no longer honor the restraining notice.

Also on July 18, McCahey received a formal Notice to Judgment Debtor from Rosenthal. New York law requires that such a notice be sent to judgment debtors whenever their property is restrained. The Notice disclosed the name of the judgment creditor and information about the underlying judgment. It also informed the judgment debtor that property of the debtor has been taken, that some forms of property are exempt from seizure (one example given is welfare such as AFDC), that the debtor may contact "the person sending this notice" or a lawyer or Legal Aid, and that there is a procedure to get property back if the property is exempt.

As suggested by the form, McCahey contacted "the person sending this notice," i.e. Rosenthal, and informed him that the money in the account was welfare money and thus exempt from seizure. Rosenthal asked her to send him a copy of her welfare check. McCahey's next check arrived on August 15, and she then sent Rosenthal a copy.[1]

On August 26, at the direction of Rosenthal, the Sheriff of Suffolk County served an execution on the bank. Three days later, the Sheriff sent another Notice to Judgment Debtor to McCahey, but McCahey did not receive it. On August 30, the bank turned over $35.13 to the Sheriff. On September 19, the Sheriff turned over the money to Rosenthal. Rosenthal received only $11 because of sheriff's fees. When he called the bank to determine why he had received only $11, the bank again informed him that the money in the account was exempt. Nonetheless, on October 4, 1983, the bank paid the Sheriff the entire balance in the account, $406.82.

At some later date, the plaintiff contacted the Legal Aid Society, as the Notice to Judgment Debtor had recommended. Rather than invoke the procedures provided by New York statute to recover levied property, however, the Legal Aid lawyer attempted to intervene in litigation pending before Judge Lasker, *Deary v. Guardian Loan Co.*, 534 F.Supp. 1178 (S.D.N.Y.1982). In that case, Judge Lasker had declared unconstitutional the predecessor statutes of the ones at issue in the instant case and had retained jurisdiction over the issue of whether the instant statutes were constitu-

---

**1.** Rosenthal claims that he never received the copy of the check.

tional.[2] Leave to intervene in *Deary* was denied to McCahey. Nevertheless, Rosenthal returned McCahey's money as a consequence of the attempted intervention.[3]

McCahey then instituted the present action to recover for the loss of the use of her money for four and one-half months.[4] She claims that during this period she fell behind in her rent and utility payments, skimped on food and clothing, and was afraid to use her bank account.

### 2. *New York's Current Post-Judgment Remedies*

In *Deary*, Judge Lasker found that New York's earlier post-judgment remedies violated due process because they did not provide notice to the debtor that: (i) property had been seized, (ii) such property might be exempt from seizure, or (iii) there were procedures available to contest the seizure. 534 F.Supp. at 1187–88. After Judge Lasker's decision, the New York legislature enacted the revisions at issue in this case. The revised statutory scheme is set out in the appendices to this opinion.

The current process of enforcing money judgments begins when the attorney for the judgment creditor issues a restraining notice to the holder of the judgment debtor's property. (APPENDIX A) The restraining notice includes information about the underlying action and informs the recipient that transfer of property by the debtor is punishable as contempt of court. If the restraining notice is sent to someone other than the judgment debtor, a copy of it must also be mailed to the judgment debtor within four days of service of the notice.

---

**2.** The case was eventually settled, without a ruling by Judge Lasker on the constitutionality of the statutes at issue in the instant case.

**3.** Rosenthal claims that he returned the money when McCahey attempted to intervene in *Deary* because that was the first time that he had received a sworn document claiming an exemption.

**4.** The issue of mootness arises in cases similar to the present one, because the judgment credi-

In addition to the information supplied by the restraining notice, the notice sent to the judgment debtor must state:

### NOTICE TO JUDGMENT DEBTOR

Money or property belonging to you may have been taken or held in order to satisfy a judgment which has been entered against you. Read this carefully. YOU MAY BE ABLE TO GET YOUR MONEY BACK

State and federal laws prevent certain money or property from being taken to satisfy judgments. Such money or property is said to be "exempt". The following is a partial list of money which may be exempt:

1. Supplemental security income (SSI);
2. Social security;
3. Public assistance (welfare);
4. Alimony or child support;
5. Unemployment benefits;
6. Disability benefits;
7. Workers' compensation benefits;
8. Public or private pensions; and
9. Veterans benefits.

If you think that any of your money that has been taken or held is exempt, you must act promptly because the money may be applied to the judgment. If you claim any of your money that has been taken or held is exempt, you may contact the person sending this notice.

Also, YOU MAY CONSULT AN ATTORNEY, INCLUDING LEGAL AID IF YOU QUALIFY. The law (New York civil practice law and rules, article four and sections fifty-two hundred thirty-nine and fifty-two hundred forty) pro-

---

tor frequently returns the debtor's property before judgment is rendered upon the constitutionality of the legislation in question. That has occurred in this case as well. However, McCahey's claim is not moot because she continues to demand compensatory and punitive damages for her temporary loss of funds. *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 8, 98 S.Ct. 1554, 1559, 56 L.Ed.2d 30 (1978).

vides a procedure for determination of a claim to an exemption.

In order to obtain possession of the restrained property, the attorney issues an execution to the sheriff. (APPENDIX B) The execution states essentially the same information as the restraining notice. The sheriff then levies on the property by serving the execution on the person in possession. (APPENDIX C) That person must turn over the property to the sheriff "forthwith." If the execution does not state that a Notice to Judgment Debtor has been sent within the prior year by the attorney, then the sheriff must send yet another Notice within four days of levy. The sheriff must hold the property for at least fifteen days before turning it over to the judgment creditor. (APPENDIX D)

The judgment debtor has two procedures for disputing seizures. (APPENDIX E) First, by serving notice on the judgment creditor and the sheriff prior to the application of the property to the debt, the judgment debtor can start a "special proceeding" to adjudicate rights in the property. Second, at any time, on its own motion or on that of any interested party, the court can issue protective orders. (APPENDIX F) If the debtor makes a motion to adjudicate his rights in the property, the creditor has eight days to file a response. However, the court may shorten that time for cause shown.

DISCUSSION

### 1. The Analytic Framework

We first discuss the analytic framework in which McCahey's challenge to the New York post-judgment remedies must be addressed. We of course assume that McCahey's bank account was exempt from seizure, N.Y.Soc.Serv.L. § 137 (McKinney 1983), and constituted a property interest of which she could not be deprived, even temporarily, without due process. *Fuentes v. Shevin,* 407 U.S. 67, 84–85, 92 S.Ct. 1983, 1996, 32 L.Ed.2d 556 (1972).

Supreme Court decisions addressing due process limits on post-judgment remedies are so scant that *Endicott-Johnson Corp. v. Encyclopedia Press, Inc.,* 266 U.S. 285, 45 S.Ct. 61, 69 L.Ed. 288 (1924), is still frequently cited. The Court held there that a judgment debtor is not constitutionally entitled to notice and a hearing prior to a wage garnishment. The Court viewed the existence of the underlying judgment as sufficient "notice of what will follow." *Id.* at 288, 45 S.Ct. at 62, *quoting Ayres v. Campbell,* 9 Iowa 213, 216 (1859).

Notwithstanding *Endicott,* post-judgment remedies have been repeatedly challenged under the due process clause in the last decade,[5] largely on the grounds that

---

**5.** *See, e.g., Dionne v. Bouley,* 757 F.2d 1344 (1st Cir.1985) (Rhode Island remedies held unconstitutional); *Duranceau v. Wallace,* 743 F.2d 709 (9th Cir.1984) (Washington child support collection remedy constitutional); *Nelson v. Regan,* 731 F.2d 105 (2d Cir.), *cert. denied,* —— U.S. ——, 105 S.Ct. 175, 83 L.Ed.2d 110 (1984) (IRS refund intercept program unconstitutional); *Finberg v. Sullivan,* 634 F.2d 50 (3d Cir.1980) (*en banc*) (Pennsylvania remedies unconstitutional); *Brown v. Liberty Loan Corp.,* 539 F.2d 1355 (5th Cir.1976), *cert. denied,* 430 U.S. 949, 97 S.Ct. 1588, 51 L.Ed.2d 797 (Florida wage garnishment remedies constitutional); *Neeley v. Century Finance Co.,* 606 F.Supp. 1453 (D.Ariz. 1985) (Arizona remedies unconstitutional); *Haines v. General Motors Corp.,* 603 F.Supp. 471 (S.D.Ohio 1984) (Kentucky remedies constitutional); *Reigh v. Schleigh,* 595 F.Supp. 1535 (D.Md.1984) (Maryland remedies held unconstitutional); *Clay v. Fisher,* 584 F.Supp. 730 (S.D. Ohio 1984) (Ohio remedies held unconstitution-

al); *Jahn v. Regan,* 584 F.Supp. 399 (E.D.Mich. 1984) (IRS refund intercept program partially unconstitutional); *Harris v. Bailey,* 574 F.Supp. 966 (W.D.Va.1983) (Virginia remedies unconstitutional); *Deary v. Guardian Loan Company,* 534 F.Supp. 1178 (S.D.N.Y.1982) (New York remedies held unconstitutional); *Community Thrift Club, Inc. v. Dearborn Acceptance Corp.,* 487 F.Supp. 877 (N.D.Ill.1980) (Illinois wage garnishment unconstitutional); *Betts v. Tom,* 431 F.Supp. 1369 (D.Hawaii 1977) (Hawaii remedies held unconstitutional); *Huggins v. Deinhard,* 134 Ariz. 98, 654 P.2d 32 (1982) (Arizona remedies constitutional); *In Re Marriage of Wyshak,* 70 Cal.App.3d 384, 138 Cal.Rptr. 811 (1977) (California remedies constitutional); *Taylor v. Madigan,* 53 Cal.App.3d 943, 126 Cal. Rptr. 376 (1976) (California remedies constitutional); *Gedeon v. Gedeon,* 630 P.2d 579 (Colo. 1981) (Colorado remedies constitutional); *Coursin v. Harper,* 236 Ga. 729, 225 S.E.2d 428 (1976) (Georgia remedies unconstitutional); *City Fi-*

*Endicott* never considered the existence of property exempt under state law from execution that might nevertheless be seized by a creditor if notice and an opportunity to be heard are not accorded the debtor. *Endicott's* rationale assumed that the judgment resolved all outstanding issues between the debtor and the creditor, collection being a ministerial act. However, the judgment does not resolve whether certain property is exempt, *Finberg v. Sullivan,* 634 F.2d 50, 56–57 (3d Cir.1980) (*en banc*), and subsequent Supreme Court decisions have implied that *Endicott* is not the last word on the subject.

*Griffin v. Griffin,* 327 U.S. 220, 66 S.Ct. 556, 90 L.Ed. 635 (1946), involved the collection of past-due alimony payments arising out of a divorce decree. The Court held that a judgment directing issuance of execution for collection of the unpaid alimony violated due process because it had been obtained *ex parte* and had cut off defenses available to the husband. Although the majority opinion did not refer to *Endicott,* debate has arisen over the effect of *Griffin* on *Endicott*'s vitality as a precedent.[6]

The expansion of the due process limitations on prejudgment remedies, *see North Georgia Finishing, Inc. v. Di-Chem, Inc.,* 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975); *Mitchell v. W.T. Grant Co.,* 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974); *Fuentes,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); *Sniadach v. Family*

*Finance Corp.,* 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969), has also led to a closer scrutiny of post-judgment remedies because of the partial analogy between the two. While some ambiguity exists, it is generally believed that pre-judgment *ex parte* attachments are constitutional if issued by a neutral judicial officer on the basis of factual representations regarding the merits of the plaintiff's claim and immediately followed by notice to the defendant and by an opportunity to contest the seizure. *See Jonnet v. Dollar Savings Bank,* 530 F.2d 1123, 1129–30 (3d Cir.1976); Scott, *Constitutional Regulation of Provisional Creditor Remedies: The Cost of Procedural Due Process,* 61 Va.L.Rev. 806, 832–33 (1975).[7] Of course, the law of pre-judgment remedies, while suggestive, does not automatically govern post-judgment remedies, which are available only after all doubt as to liability has been erased.

The majority of courts that have recently considered the due process aspects of post-judgment remedies have adopted a balancing analysis derived from *Mathews v. Eldridge,* 424 U.S. 319, 334, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976). As Justice Powell explained:

> [R]esolution of ... whether ... procedures provided ... are constitutionally sufficient requires analysis of the governmental and private interests that are affected. More precisely, our prior deci-

*nance Co. v. Winston,* 238 Ga. 10, 231 S.E.2d 45 (1976) (Georgia remedies unconstitutional); *Antico v. Antico,* 241 Ga. 294, 244 S.E.2d 820 (1978) (Georgia revised remedies constitutional); *Wanex v. Provident State Bank,* 53 Md.App. 409, 454 A.2d 381 (1983) (Maryland remedies constitutional); *Warren v. Delaney,* 98 A.D.2d 799, 469 N.Y.S.2d 975 (1983) (New York remedies unconstitutional); *Cole v. Goldberger, Pedersen & Hochron,* 95 Misc.2d 720, 410 N.Y.S.2d 950 (1978) (New York remedies unconstitutional); *Mullins v. Main Bank & Trust,* 592 S.W.2d 24 (Tex.Civ. App.1979) (Texas remedies constitutional).

6. *Compare Neeley,* 606 F.Supp. at 1461–62 (*Endicott* still governs business assets, but no longer applies to personal assets because of exemptions); *Reigh,* 595 F.Supp. at 1549–52 (*Griffin* undermined *Endicott*); *Warren,* 469 N.Y.S.2d at 977 (*Endicott* no longer the law); *with Brown,*

539 F.2d at 1364 (*Griffin* does not completely undercut *Endicott*); *Haines,* 603 F.Supp. at 476 (*Endicott* was basis for *Griffin*). Indeed, members of the Court have since expressed some doubt about the continuing vitality of *Endicott.* *See Moya v. DeBaca,* 395 U.S. 825, 89 S.Ct. 2136, 23 L.Ed.2d 740 (1969) *appeal dismissed,* (Harlan, Brennan, JJ., dissenting in light of *Sniadach*); *Hanner v. DeMarcus,* 390 U.S. 736, 742, 88 S.Ct. 1437, 1441, 20 L.Ed.2d 270 (1967) *cert. dismissed as improvidently granted* (Douglas, J., dissenting) ("Is there any more reason to accept in this case the *Endicott* fiction of constructive notice because of knowledge of the underlying judgment than there was in *Griffin* ?").

7. Some courts have interpreted the pre-judgment cases as requiring prior notice and hearing when wages are garnished. *See, e.g., Brown,* 539 F.2d at 1366; *Neeley,* 606 F.Supp. at 1461.

sions indicate that identification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 334–35, 96 S.Ct. at 902–03 (citations omitted). We agree that the balancing analysis is applicable.

The creditor's interests are straightforward: a swift, sure and inexpensive mechanism for collecting judgments. This interest is most directly served by allowing creditors to reach bank accounts and other liquid assets, because seizure of those assets is the lowest-cost method of satisfying judgments.

The debtor's interest in preserving non-exempt property for his or her own use is of course subservient to the creditor's judgment. However, the debtor has a clearly legitimate interest in protecting exempt property from seizure.

The state has several interests in the matters at hand. First, it has an interest in providing inexpensive and rapid methods of collecting judgments, as part of its more general interest in ensuring compliance with its laws. Second, it has an interest in the efficient use of judicial resources, so they are not wasted in proceedings of little value. Finally, the state has an interest in seeing that laws exempting property from seizure are not evaded.

McCahey challenges the New York procedures on five grounds, all rooted in due process. She claims: (i) judgment debtors are entitled to notice and a hearing before seizure of their property; (ii) if pre-seizure remedies are not required, seizure may occur only on the order of a neutral judicial officer after disclaimer by the judgment debtor of knowledge of any exemptions; (iii) the New York Notice to Judgment Debtor does not adequately explain the procedure for pressing an exemption claim; (iv) by recommending that the debtor contact "the person sending this notice," the New York Notice to Judgment Debtor misleads the debtor into thinking that "the person," who will usually be the attorney for the creditor, will protect the debtor's rights; and (v) the New York procedure for adjudicating exemption claims does not provide a sufficiently prompt opportunity to contest the levy.

### 2. The Requirements of Due Process for Post-Judgment Seizure of a Debtor's Property

■ The district court concluded that post-judgment remedies satisfy due process requirements if they provide: (i) notice to judgment debtors that their property had been seized, (ii) notice to judgment debtors of exemptions to which they may be entitled; and (iii) a prompt opportunity for judgment debtors to challenge the seizure and assert their exemptions. *Deary,* 534 F.Supp. at 1187–88. The majority of courts have reached similar conclusions, *see, e.g., Finberg,* 634 F.2d at 59–62; *Dionne v. Bouley,* 757 F.2d 1344, 1354 (1st Cir.1985), and we also believe these requirements strike a fair balance between the competing interests.

It is certainly clear that judgment debtors are entitled to at least this much protection. Providing post-seizure notice of the fact of the seizure is an elemental requirement of due process, *see Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950), and, because the assets cannot thereafter be transferred or hidden by the debtor without court authority, post-seizure notice adds little to the cost of collection. Providing notice of possible exemptions and a prompt opportunity to be heard on claims of exemption add costs to the collection of judgments but also enhance the likelihood that the exemptions provided under state law will be recognized.

■ McCahey argues that additional procedural protections must be accorded debtors before seizure: specifically notice and a hearing. We disagree. That level of procedural protection for debtors is not constitutionally required even in the case of prejudgment attachments, when liability has not been determined. A fortiori, it can hardly be required where the creditor's claim has been finally confirmed by a court, and where the risk that the debtor will conceal assets is stronger than in the prejudgment context. For those reasons, we agree with the great majority of courts that have considered and rejected this suggestion. *See, e.g., Dionne,* 757 F.2d at 1352; *Brown v. Liberty Loan Corp.,* 539 F.2d 1355, 1363 (5th Cir.1976); *Huggins v. Deinhard,* 134 Ariz. 98, 654 P.2d 32, 37 (1982); *Cole v. Goldberger, Pedersen & Hochron,* 95 Misc.2d 720, 410 N.Y.S.2d 950, 955–56 (1978); *but see Coursin v. Harper,* 236 Ga. 729, 225 S.E.2d 428, 430 (1976).

■ McCahey also suggests that if *ex parte* orders are permitted, they must be issued only by neutral judicial officers on the basis of affidavits submitted by judgment creditors disclaiming knowledge of the existence of any exemptions the debtor may assert. We believe neither step is required by due process, because their cost is outweighed by any benefits they might produce. The need for involving a neutral judicial officer is minimal because of the existence of the underlying judgment, which, even if rendered by default, involved a court at some point in the process. *Finberg,* 634 F.2d at 62; *Brown,* 539 F.2d at 1369; *see Scott,* 61 Va.L.Rev. at 853–56. A requirement that the creditor swear to ignorance of any possible exemptions likewise adds little but cost. Even if the debtor asserts an exemption to the creditor before seizure, the creditor still has a right to have that assertion adjudicated. *See, e.g., Finberg,* 634 F.2d at 62; *Cole,* 410 N.Y.S.2d at 956. Moreover, the debtor is in the best position to provide evidence of the exemption and may legitimately be required to carry the burden of proving its existence. *See, e.g., McCormick on Evidence* 950 (3d ed. 1984) ("where the facts

with regard to an issue lie peculiarly in the knowledge of the party, that party has the burden of proving the issue"); Fed.R.Civ.P. 8(c) (burden on defendant to prove payment, discharge in bankruptcy, and license). We thus conclude that New York's statutory scheme provides sufficient notice and otherwise meets due process standards as far as the initial seizure is concerned.

### 3. *The Adequacy of New York's Required Notice to Judgment Debtor*

■ We turn now to McCahey's more specific objections to the New York procedures. She argues that the statutorily required Notice to Judgment Debtors is constitutionally inadequate because it does not apprise the judgment debtor of the specific steps to be taken in order to adjudicate exemption claims.

The Notice states: "The law (New York sections fifty-two hundred thirty-nine and fifty-two hundred forty) provides a procedure for determination of a claim to an exemption." McCahey argues that instead of referring the debtor to the relevant statutes, the notice should provide specific information about the time, place, or method for making a motion to perfect the exemption claim and obtain a protective order. Brief of Appellant at 23.

We are not persuaded even that this additional information would be helpful, much less that it is constitutionally required. Elaborate explanation of the procedures for asserting an exemption may so confuse a layman that he or she may be put off by the complexities and simply allow the seizure. Indeed, McCahey states in her brief that the very notice she challenges as being too sparse was "too difficult for her to understand." Brief of Appellant at 20. A fuller recitation of New York motions practice would hardly clarify matters. The recommendation in capital letters that the debtor contact an attorney or Legal Aid, in combination with notice of the existence of procedures to test claims of exemption, is a sufficient and efficient notice to judgment debtors of their rights.

It is true that New York might rewrite this legislation in the hope of simplifying it so laymen might act as their own counsel. This has been attempted in a number of states,[8] and New York itself provides relatively simple procedures for contesting prejudgment attachments.[9]

New York of course *could* provide simplified procedures for hearing these claims. However, we find no support for the assertion that New York *must* provide such procedures as a requirement of due process. No matter how laudatory the goal, judicial experience with *pro se* litigants offers no guarantee that a simplified procedure for use by laymen is better than a more complex procedure used by lawyers. Absent such a guarantee, the requirements of due process do not dictate use of one method rather than another.

In support of her claim for a more elaborate notice, McCahey relies heavily upon *Memphis Light, Gas & Water Division v. Craft*, 436 U.S. 1, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978). In that case, the Court ruled that the notice a power company provided customers before it turned off their service was insufficient for purposes of due process. The notice made no mention "of a procedure for the disposition of a disputed claim." *Id.* at 13, 98 S.Ct. at 1562. The Court went on to state that "notice is given to thousands of customers of various levels of education, experience, and resources. Lay consumers of electric service, the unin-terrupted continuity of which is essential to health and safety, should be informed clearly of the availability of an opportunity to present their complaint. In essence, recipients of a cutoff notice should be told where, during which hours of the day, and before whom disputed bills appropriately may be considered." *Id.* at 15 n. 15, 98 S.Ct. at 1563 n. 15.

We do not believe that *Memphis Gas* alters our analysis in the present case. First, the Court also stated that a new notice developed by Memphis Gas "may be entirely adequate." *Id.* at 15 n. 16, 98 S.Ct. at 1563 n. 16. That notice "lists 'methods of contact' and states in part that trained 'Credit Counselors are available to clear up any questions, discuss disputed bills or to make any needed adjustments. There are supervisors and other management personnel available if you are not satisfied with the answers or solutions given by the Credit Counselors.'" *Id.* at 15 n. 16, 98 S.Ct. at 1563 n. 16. We believe the notice McCahey received is functionally equivalent to the second notice in *Memphis Gas*.

In addition, there is a difference between the complexity of proving an exemption claim and the complexity of disputing a utility bill. A single company providing a dispute resolution procedure for a single type of dispute is more able to develop simple methods of resolving those disputes than is a state providing procedures to

**8.** Connecticut provides a simple procedure for judgment debtors who are natural persons to claim exemptions when their bank accounts are seized. When a bank receives an execution on an account, the bank is required to forward the execution and a simple exemption claim form to the account owner. The debtor has 15 days to return the form to the bank. If the form is returned, the bank forwards the claim to the clerk of the court, who schedules a hearing on the short motion calendar, usually for the following Monday. Conn.Gen.Stat. § 52–367b (1983).

Under California law, the creditor sends the execution and the exemption claim form to the debtor. The debtor has 10 days to claim an exemption, by sending the form to the court clerk. If the debtor does so, the creditor has 10 days to file a motion for a hearing. If the creditor fails to request a hearing within 10 days, the account is returned to the debtor. A hearing must be held not more than 20 days after the creditor files his motion for a hearing. Cal.Civ.Proc.Code §§ 703.020, 703.520, 703.550, 703.570 (1985).

A number of other states have provided simplified procedures for claiming exemptions. *See, e.g.,* Minn.Stat. § 571–41 (1984); Ohio Rev. Code.Ann. § 2716.06 (Page 1984); Okla.Stat. tit. 12 § 1174 (West 1985).

**9.** After obtaining an *ex parte* pre-judgment attachment, the plaintiff must move within five days after levy to have the order confirmed. Failure to do so results in the lapse of the attachment. The plaintiff not only has to make the motion for confirmation, but also bears the burden of proof at the hearing. CPLR §§ 6211, 6223.

enforce its judgments against various sorts of property.

McCahey also relies on *Nelson v. Regan,* 560 F.Supp. 1101 (D.Conn.1983), *aff'd* 731 F.2d 105 (2d Cir.), *cert. denied,* —— U.S. ——, 105 S.Ct. 175, 83 L.Ed.2d 110 (1984). That case involved joint taxpayers who were entitled to tax refunds where one of them was also delinquent in child support payments. They successfully claimed that the notice they received from the Internal Revenue Service informing them that their refunds were being seized for the support payments was insufficient because, *inter alia,* it did not explain how to dispute the seizure. In *Nelson,* however, there were no regularized procedures for asserting defenses of which notice could be given. *Id.* at 1106. In the present case, procedures for claiming an exemption exist. Moreover, the child support intercept program affected the second taxpayer, who was not subject to the judgment and who became involved only because of the joint return. Notice that procedures exist to assert exemptions and a recommendation to seek legal counsel thus meet the constitutional standards for post-judgment remedies.

McCahey next argues the Notice to Judgment Debtors violates due process because its recommendation that the judgment debtor "contact the person sending this notice" is misleading. She argues that this recommendation leads the debtor into believing that "the person sending this notice," usually the attorney for the judgment creditor, will protect the debtor's rights. She also claims that the notice must state that mere contact with the sender does not necessarily protect exempt property from seizure.

Although we view McCahey's assertions as to the behavioral responses of judgment debtors with a degree of skepticism, we also believe that the Notice is misleading only if the initial recommendation is viewed in isolation. That recommendation does not stand alone but is immediately followed by bold type recommending that the debtor contact a lawyer or Legal Aid. We believe this second recommendation eliminates any harmful implications of the prior statement by clearly indicating an alternative course of action if satisfaction is not achieved.

McCahey stresses that she called Rosenthal, as the form recommended, and was led by him to believe that he would resolve the dispute. This, she claims, is proof of the constitutional defectiveness of the notice. However, she also followed the recommendation that the judgment debtor contact an attorney or Legal Aid. Her own case, therefore, hardly demonstrates that the form is so poorly drafted as to lead debtors into complete reliance on the creditor's attorney.

We further note that recommending contact with the creditor's attorney is not bad practical advice for many judgment debtors, who may be able to avoid the most painful consequences by working out an agreeable method of satisfaction. We add this observation, not out of any belief in the generosity of collection agencies, but out of recognition that legal processes have costs for them also which may be reduced through negotiation with debtors.

### 4. *The Requirement of a Prompt Hearing*

McCahey argues finally that New York's post-judgment procedures are defective because they do not guarantee a prompt post-seizure hearing. We agree that due process requires that a judgment debtor be afforded an opportunity for a hearing on an exemption claim within a matter of days. *Finberg,* 634 F.2d at 59; *Dionne,* 757 F.2d at 1353. McCahey has failed to demonstrate that New York does not provide her with that opportunity.

It is true that the statutory scheme in question does not provide a mandatory outside time limit on according a hearing on an exemption claim. It is also true that the majority of courts that have squarely addressed the issue has stated that only a

mandatory period can withstand constitutional scrutiny.[10]

In each of these cases, however, with the exceptions of *Dionne* and *Neeley*,[11] the judgment debtors had resorted to the state procedures to regain their property before they brought a constitutional challenge in federal court. In each case, moreover, the time that elapsed exceeded what the court decided was the constitutionally permissible maximum. McCahey, on the other hand, made no effort to recover her property by using New York's procedures. We are therefore not faced with a concrete example of the New York statute in action, and we are unwilling to invalidate a statute because it might, but need not, be applied in an unconstitutional manner.

The New York statute on its face provides an opportunity for a prompt hearing. The only specific time limit on special proceedings, CPLR § 5239, and motions, CPLR § 5240, requires the respondent to be served with the petition or motion papers at least eight days before the hearing. CPLR §§ 403(b), 2214(b). Both periods, however, may be shortened for cause. CPLR §§ 403(b), 2214(d).

It would hardly strain the bounds of statutory construction for New York courts to hold that exemption claims must be heard expeditiously under the New York statutes. Such claims might be treated as presenting "cause" because of due process requirements, and judgment debtors would then have their claims heard within a matter of days. Indeed, in *Banks v. Leef*, 120 Misc.2d 1083, 467 N.Y.S.2d 156 (1983), the judgment debtor was able to obtain an order to show cause with a return date only 10 days after the levy was served on the garnishee, a period of time consistent with most of the caselaw.

McCahey relies heavily on *Barry v. Barchi*, 443 U.S. 55, 99 S.Ct. 2642, 61 L.Ed.2d 365 (1979), which involved a horse trainer whose horse was discovered to have been drugged during a race and whose license was suspended for 15 days pursuant to New York law. The Court invalidated the statute because it specified no time limit within which a hearing must be held and allowed the board to wait until thirty days after the hearing to issue a final order. Given that loss of the license destroyed the trainer's livelihood, the Court held that hearings had to be held and concluded "without appreciable delay." *Id.* at 66, 99 S.Ct. at 2650.

Unlike *Barchi*, there is no basis in this case to hold that New York post-judgment remedies prevent judgment debtors from having their claims heard "without appreciable delay." CPLR § 5239 or CPLR § 5240 do not specify a time period for ruling on exemption claims, but neither do they explicitly give the courts thirty days to delay a ruling. *Barchi* is therefore not controlling.

The present case is controlled, or at least informed, by *Carey v. Sugar*, 425 U.S. 73, 96 S.Ct. 1208, 47 L.Ed.2d 587 (1976) (*per curiam*). That case involved an attack on the constitutionality of New York's prejudgment attachment statute. The plain-

---

**10.** *See, e.g., Dionne*, 757 F.2d at 1353 ("one might expect that it would be fortuitous whether the state judge before whom a hearing is sought treated the matter as requiring immediate attention, absent any provision of law specifying the debtor's procedural rights"); *Finberg*, 634 F.2d at 59 (15 days too long); *Neeley*, 606 F.Supp. at 1467 ("the hearing must be commenced between 5 days after the request ... and the 14th day after the request"); *Reigh*, 595 F.Supp. at 1556 ("all the courts examining this question have concluded, a prompt judicial hearing on this question in these circumstances is one which will take place within two weeks or less from the time the claim of exemption is filed"); *Clay*, 584 F.Supp. at 733 ("an ad hoc method of providing hearings does not satisfy due process

because ... [t]here is no statutory time limit on setting the hearing"; 38 days too long); *Harris*, 574 F.Supp. at 971 ("a mandated period of time, will help ensure that the exemption issue will be decided before any hardship results"; a few days may be too long).

**11.** In *Dionne*, the court observed that "Rhode Island law is silent as to any right of a judgment debtor to be heard after an attachment is made." 757 F.2d at 1352. In *Neeley*, the court noted that the statutes in question, would, by their own terms, not afford the judgment debtor a hearing for more than a month after the debtor requested it. 606 F.Supp. at 1467. New York's statutes are clearly distinguishable.

tiffs contended that the hearing provided on a motion to vacate the attachment was inadequate because the hearing would be concerned only with the question whether the " 'attachment is unnecessary to the security of the plaintiff,' § 6223, and would not require the plaintiff to litigate the question of the likelihood that it would ultimately prevail on the merits." *Id.* at 77, 96 S.Ct. at 1210. The statutory language superficially supported the plaintiffs' argument in stating: "If, after the defendant has appeared in the action, the court determines that the attachment is unnecessary to the security of the plaintiff, it shall vacate the order of attachment." CPLR § 6223 (McKinney 1980). Nevertheless, the case was remanded because two New York trial courts had held that the statute should not be so narrowly construed. The Court stated: "[i]t would be unwise for this Court to address the constitutionality of the New York attachment statutes, for decision on that issue may be rendered unnecessary by a decision of the New York courts as a matter of state law." 425 U.S. at 78, 96 S.Ct. at 1210. We think that it would be just as unwise to hold CPLR §§ 403, 2214 facially unconstitutional because of a lack of a mandatory time limit. We therefore choose to await a concrete example of its application by New York courts to a judgment debtor.

We have examined McCahey's other claims and have determined them to be without merit.

Affirmed.

### APPENDIX A

CPLR § 5222, which governs restraining notices, provides:

(a) *Issuance; on whom served; form; service.* A restraining notice may be issued by the clerk of the court or the attorney for the judgment creditor as officer of the court. It may be served upon any person, except the employer of a judgment debtor where the property sought to be restrained consists of wages or salary due or to become due to the judgment debtor. It shall be served personally in the same manner as a summons or by registered or certified mail, return receipt requested. It shall specify all of the parties to the action, the date that the judgment was entered, the court in which it was entered, the amount of the judgment and the amount then due thereon, the names of all parties in whose favor and against whom the judgment was entered, and it shall set forth subdivision (b) and shall state that disobedience is punishable as a contempt of court. . . .

(b) *Effect of restraint; prohibition of transfer; duration.* A judgment debtor served with a restraining notice is forbidden to make or suffer any sale, assignment, transfer or interference with any property in which he has an interest, except upon direction of the sheriff or pursuant to an order of the court, until the judgment is satisfied or vacated. A restraining notice served upon a person other than a judgment debtor is effective only if, at the time of service, he owes a debt to the judgment debtor or he is in the possession or custody of property in which he knows or has reason to believe the judgment debtor has an interest, or if the judgment creditor has stated in the notice that a specified debt is owed by the person served to the judgment debtor or that the judgment debtor has an interest in specified property in the possession or custody of the person served. All property in which the judgment debtor is known or believed to have an interest then in and thereafter coming into the possession or custody of such a person, including any specified in the notice, and all debts of such a person, including any specified in the notice, then due and thereafter coming due to the judgment debtor, shall be subject to the notice. Such a person is forbidden to make or suffer any sale, assignment or transfer of, or any interference with, any such property, or pay over or otherwise dispose of any such debt, to any person other than the sheriff, except upon direction of the sheriff or pursuant to an order of the court, until the expiration of

one year after the notice is served upon him, or until the judgment is satisfied or vacated, whichever event first occurs. A judgment creditor who has specified personal property or debt in a restraining notice shall be liable to the owner of the property or the person to whom the debt is owed, if other than the judgment debtor, for any damages sustained by reason of the restraint. If a garnishee served with a restraining notice withholds the payment of money belonging or owed to the judgment debtor in an amount equal to twice the amount due on the judgment, the restraining notice is not effective as to other property or money.

(c) *Subsequent notice.* Leave of court is required to serve more than one restraining notice upon the same person with respect to the same judgment.

(d) *Notice to judgment debtor.* If a notice in the form prescribed in subdivision (e) has not been given to the judgment debtor within a year before service of a restraining notice, a copy of the restraining notice together with the notice to judgment debtor shall be mailed by first class mail or personally delivered to each judgment debtor who is a natural person within four days of the service of the restraining notice. Such notice shall be mailed to the defendant at his residence address, or in the event such mailing is returned as undeliverable by the post office, or if the residence address of the defendant is unknown, then to the defendant in care of the place of employment of the defendant if known, in an envelope bearing the legend "personal and confidential" and not indicating on the outside thereof, by the return address or otherwise, that the communication is from an attorney or concerns a judgment, or if neither the residence address nor the place of employment of the defendant is known then to the defendant at any other known address.

(e) *Content of notice.* The notice required by subdivision (d) shall be in substantially the following form and may be

included in the restraining notice. (The content of the notice is reproduced in the text of this opinion.)

APPENDIX B

CPLR § 5230, which governs executions, provides:

(a) *Form.* An execution shall specify the date that the judgment was entered, the court in which it was entered, the amount of the judgment and the amount due thereon and it shall specify the names of the parties in whose favor and against whom the judgment was entered. An execution shall direct that only the property in which a named judgment debtor who is not deceased has an interest, or the debts owed to him, be levied upon or sold thereunder and shall specify the last known address of that judgment debtor. Where the judgment was entered in a court other than the supreme, county or a family court, the execution shall also specify the date on which a transcript of the judgment was filed with the clerk of the county in which the judgment was entered. Where jurisdiction in the action was based upon a levy upon property or debt pursuant to an order of attachment, the execution shall also state that fact, describe all property and debts levied upon, and direct that only such property and debts be sold thereunder. Where the judgment was recovered for all or part of a mortgage debt, the execution shall also describe the mortgaged property, specify the book and page where the mortgage is recorded, and direct that no part of the mortgaged property be levied upon or sold thereunder.

(b) *Issuance.* At any time before a judgment is satisfied or vacated, an execution may be issued from the supreme court, county court or a family court, in the county in which the judgment was first docketed, by the clerk of the court or the attorney for the judgment creditor as officer of the court, to the sheriffs of one or more counties of the state, directing each of them to satisfy the judgment out of the real and personal property of

the judgment debtor and the debts due to him.

(c) *Return.* An execution shall be returned to the clerk of the court from which it was issued within sixty days after issuance unless the execution has been served in accordance with section 5231 or subdivision (a) of section 5232. The time may be extended in writing for a period of not more than sixty additional days by the attorney for the judgment creditor. Further like extensions may be given by the attorney for the judgment creditor unless another execution against the same judgment debtor has been delivered to the same enforcement officer and has not been returned.

(d) *Records of the sheriff.* Each sheriff shall keep a record of the executions delivered to him showing the names of the parties and the judgment debtor; the dates of issue and return; the date and time of delivery, which shall be endorsed upon the execution; the amount due at the time the execution was delivered to him; and the amount of the judgment and of the sheriff's fees unpaid, if any, at the time of the return.

### APPENDIX C

CPLR § 5232, which governs levies, provides:

(a) *Levy by service of execution.* The sheriff shall levy upon any interest of the judgment debtor in personal property not capable of delivery, or upon any debt owed to the judgment debtor, by serving a copy of the execution upon the garnishee, in the same manner as a summons, except that such service shall not be made by delivery to a person authorized to receive service of summons solely by a designation filed pursuant to a provision of law other than rule 318.... A levy by service of the execution is effective only if, at the time of service, the person served owes a debt to the judgment debtor or he is in the possession or custody of property not capable of delivery in which he knows or has reason to believe the judgment debtor has an interest, or if the judgment creditor has stated in a notice which shall be served with the execution that a specified debt is owed by the person served to the judgment debtor or that the judgment debtor has an interest in specified property not capable of delivery in the possession or custody of the person served. All property not capable of delivery in which the judgment debtor is known or believed to have an interest then in or thereafter coming into the possession or custody of such a person, and all debts of such a person, including any specified in the notice, then due or thereafter coming due to the judgment debtor, shall be subject to the levy. The person served with the execution shall forthwith transfer all such property, and pay all such debts upon maturity, to the sheriff and execute any document necessary to effect the transfer or payment. After such transfer or payment, property coming into the possession or custody of the garnishee, or debt incurred by him, shall not be subject to the levy. Until such transfer or payment is made, or until the expiration of ninety days after the service of the execution upon him, or of such further time as is provided by any order of the court served upon him, whichever event first occurs, the garnishee is forbidden to make or suffer any sale, assignment or transfer of, or any interference with, any such property, or pay over or otherwise dispose of any such debt, to any person other than the sheriff, except upon direction of the sheriff or pursuant to an order of the court. At the expiration of ninety days after a levy is made by service of the execution, or of such further time as the court, upon motion of the judgment creditor has provided, the levy shall be void except as to property or debts which have been transferred or paid to the sheriff or as to which a proceeding under sections 5225 or 5227 has been brought. A judgment creditor who has specified personal exemption or debt to be levied upon in a notice served with an execution shall be liable to the owner of the property or the person to whom

the debt is owed, if other than the judgment debtor, for any damages sustained by reason of the levy.

(b) *Levy by seizure.* The sheriff shall levy upon any interest of the judgment debtor in personal property capable of delivery by taking the property into his custody without interfering with the lawful possession of pledgees and lessees. The sheriff shall forthwith serve a copy of the execution in the manner prescribed by subdivision (a) upon the person from whose possession or custody the property was taken.

(c) *Notice to judgment debtor.* Where an execution does not state that a notice in the form presented by subdivision (c) [sic] of section fifty-two hundred twenty-two of this chapter has been duly served upon the judgment debtor within a year, the sheriff shall, not later than four days after service of the execution upon any garnishee, mail by first class mail or personally deliver, to each judgment debtor who is a natural person, a copy of the execution together with such notice. The sheriff shall specify on the notice to judgment debtor the name and address of the judgment creditor or the judgment creditor's attorney. The notice shall be mailed to the judgment debtor at his residence address; and in the event such mailing is returned as undeliverable by the post office, or if the residence address of the judgment debtor is unknown, then to the judgment debtor in care of the place of employment of the judgment debtor if known, in an envelope bearing the legend "personal and confidential" and not indicating on the outside thereof, by the return address or otherwise, that the communication is from a sheriff or concerns a judgment; or if neither the residence address nor the place of employment of the judgment debtor is known, then to the defendant at any other known address.

## APPENDIX D

CPLR § 5234, which governs the distribution by the sheriff of the seized property, provides in part:

(a) *Distribution of proceeds of personal property.* After deduction for and payment of fees, expenses and any taxes levied upon sale, delivery, transfer or payment, the proceeds of personal property or debt acquired by a receiver or a sheriff or other officer authorized to enforce the judgment shall be distributed to the judgment creditor and any excess shall be made over to the judgment debtor. No distribution of proceeds shall be paid until fifteen days after service of the execution except upon order of the court.

## APPENDIX E

CPLR § 5239, which governs proceedings to determine adverse claims, provides:

Prior to the application of property or debt by a sheriff or receiver to the satisfaction of a judgment, any interested person may commence a special proceeding against the judgment creditor or other person with whom a dispute exists to determine rights in the property or debt, by serving a notice of petition upon the respondent, the sheriff or receiver, and such other person as the court directs, in the same manner as a notice of motion. The proceeding may be commenced in the county where the property was levied upon, or in a court or county specified in subdivision (a) of section 5221. The court may vacate the execution or order, void the levy, direct the disposition of the property or debt, or direct that damages be awarded. Where there appear to be disputed questions of fact, the court shall order a separate trial, indicating the person who shall have possession of the property pending a decision and the undertaking, if any, which such person shall give. If the court determines that any claim asserted was fraudulent, it may require the claimant to pay to any party adversely affected thereby the reasonable expenses incurred by such party in the proceeding, including reasonable attorneys' fees, and any other damages suffered by reason of the claim. The

court may permit any interested person to intervene in the proceeding.

APPENDIX F

CPLR § 5240, which empowers courts to intervene in the post-judgment remedy process on their own motion, provides:

The court may at any time, on its own initiative or the motion of any interested person, and upon such notice as it may require, make an order denying, limiting, conditioning, regulating, extending or modifying the use of any enforcement procedure....

CPLR § 403, which governs the institution of special proceedings, provides:

(a) *Notice of petition.* A notice of petition shall specify the time and place of the hearing on the petition and the supporting affidavits, if any, accompanying the petition.

(b) *Time for service of notice of petition and answer.* A notice of petition, together with the petition and affidavits specified in the notice, shall be served on any adverse party at least eight days before the time at which the petition is noticed to be heard. An answer and supporting affidavits, if any, shall be served at least one day before such time. A reply together with supporting affidavits, if any, shall be served at or before such time. An answer shall be served at least five days before such time if a notice of petition served at least ten days before such time so demands; whereupon an reply shall be served at least one day before such time.

(c) *Manner of service.* A notice of petition shall be served in the same manner as a summons in an action.

(d) *Order to show cause.* The court may grant an order to show cause to be served, in lieu of a notice of petition at a time and in a manner specified therein.

KEARSE, Circuit Judge, dissenting:

I respectfully dissent from the majority's holding that the statutorily required "Notice to Judgment Debtor" ("Notice") sent to plaintiff Cynthia McCahey satisfies due process. While the current form of the notice used in New York for notifying judgment debtors that their property has been seized and that they may contest the seizure of exempt property is an improvement over the postjudgment remedies held constitutionally deficient in *Deary v. Guardian Loan Co.*, 534 F.Supp. 1178 (S.D.N.Y.1982), I do not believe the New York legislature has cured all of the constitutional infirmities of the prior notice.

As the Supreme Court has stated, " 'An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.' " *Memphis Light, Gas & Water Division v. Craft,* 436 U.S. 1, 13, 98 S.Ct. 1554, 1562, 56 L.Ed.2d 30 (1978) (quoting *Mullane v. Central Hanover Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950)). In *Memphis Light,* the Court held that a utility's notification of the termination of utility service did not meet this standard because it failed to advise the customer of the availability of a procedure for protesting the proposed termination. The Court held that utility customers, who were "of various levels of education, experience, and resources," were constitutionally entitled to "be informed clearly of the availability of an opportunity to present their complaint." *Id.,* 436 U.S. at 15 n. 15, 98 S.Ct. at 1563 n. 15. The Court specified the minimum notice required by due process as follows: "In essence, recipients of a cutoff notice should be told where, during which hours of the day, and before whom disputed bills appropriately may be considered." *Id.*

I agree with the *Deary* court that the principles stated in *Memphis Light* are equally applicable in determining the notice to which a New York judgment debtor is constitutionally entitled. Here, as in *Memphis Light,* the affected individuals are of various levels of education, experience and resources, and should be given notice of both the exemptions to which they may be

entitled and the procedures for asserting those exemptions.

The New York legislature, in amending the prior statutory scheme in light of *Deary,* has included in the form of notice only the section numbers of the statutory provisions that govern objections to the seizure of exempt property and has included no disclosure of what those procedures are. In my view, the information thereby given the judgment debtor does not meet the minimum constitutional requirements. I do not find, as does the majority, that the present Notice is substantially the equivalent of a revised form of notice developed by the *Memphis Light* utility which the Supreme Court thought "may be entirely adequate." *Memphis Light,* 436 U.S. at 15 n. 16, 98 S.Ct. at 1563 n. 16. The new notice in *Memphis Light* actually described "methods of contact" and stated that trained credit counselors were available "to clear up any questions, discuss disputed bills or to make any needed adjustments." *Id.* Thus, the new notice apparently satisfied the Court's requirement that customers be told before whom disputed bills appropriately might be resolved. By contrast, the New York Notice does not clearly tell judgment debtors the agency from which they are most likely to get relief— *i.e.,* the state courts. I think it an unreasonable assumption that all judgment debtors, of whatever level of education and experience, will understand the mere reference to two sections of the New York Civil Practice Law and Rules as an instruction that they may go to court and obtain a prompt hearing on their claim.

Nor do I view it as sufficient that the Notice indicates that judgment debtors may talk to the person sending the notice or to an attorney of their own. While in some cases contacting the attorney who sent the notice may well be the easiest practical solution, and while we have no desire to multiply proceedings unnecessarily, I believe that a debtor who sees that as the first course of action recommended by the Notice may well be materially misled. The facts of this very case show that the judgment creditor's attorney simply may disregard advice even from disinterested third parties such as bank officials, and may refuse to wait for promised evidence from the debtor that the property in question is in fact exempt. And although the majority states that McCahey did not rely on this part of the Notice but contacted Legal Aid as well, the record indicates that she apparently did not contact Legal Aid until some 2½ months after she received the Notice to Judgment Debtor, and then only after her bank had paid the Suffolk County Sheriff the entire balance in her account. Thus, McCahey may well have been misled by the Notice into believing that the first course of action listed—contacting the person who sent it—identified the person before whom the disputed claim of exemption might appropriately be resolved.

In sum, I would hold that the requirements of due process, as set out in *Memphis Light,* require that, at a minimum, the Notice to Judgment Debtor should tell judgment debtors to what court they should go to seek relief from the seizure, and that the present statement that the debtor may contact the person who sent the notice should be modified to make clear that this is a practical route, not a sure one.