Tony W. **STRICKLAND**, Plaintiff,

v.

Richard T. **ALEXANDER**, Clerk of Court of the State Court of Gwinnett County, Georgia, Defendant.

Civil Action No. 1:12–CV–02735–MHS.

United States District Court,
N.D. Georgia,
Atlanta Division.

Signed Sept. 8, 2015.

David A. Webster, Attorney at Law, At-
lanta, GA, Donald Maurice Coleman, Jon

Erik Heath, Atlanta Legal Aid Society, Inc., Atlanta, GA, for Plaintiff.

Christopher R. Yarbrough, Frederick J. Hanna & Associates, P.C., Marietta, GA, for Defendant.

## ORDER

MARVIN H. SHOOB, Senior District Judge.

This action challenging the constitutionality of Georgia's post-judgment garnishment statute, O.C.G.A. § 18–4–60 *et seq.*, is before the Court on the parties' cross-motions for summary judgment. For the following reasons, the Court denies defendant's motion for summary judgment [Doc. 90], grants plaintiff's motion for summary judgment [Doc. 93], and enters appropriate declaratory and injunctive relief.

*Statement of Facts* [1]

Plaintiff Tony W. Strickland had a long career installing gas products until he was diagnosed with cancer in 2004. Mr. Strickland survived his bout with cancer, but because of the lasting effects of his chemotherapy treatments, he was unable to work as many hours as he had before. In 2005, as a result of the financial hardship created by his inability to work, Mr. Strickland defaulted on a Discover credit card he had used to cover household expenses during his chemotherapy treatments.

Subsequently, Mr. Strickland developed other health issues. He suffered a series of strokes and developed atrial fibrillation, a potentially dangerous heart arrhythmia. He was prescribed Propafenone (commonly known as Rythmol) to keep his heart in rhythm and was told that his heart could

fall out of rhythm, with dire consequences, if it was not taken as prescribed.

On June 25, 2009, Mr. Strickland seriously injured his back while at work and subsequently began receiving weekly workers' compensation benefits. In February 2011, Mr. Strickland received a lump-sum workers' compensation settlement for his injuries in the amount of $30,000. He and his wife, Lynn, opened an account at JPMorgan Chase ("Chase") specifically for the purpose of setting aside these workers' compensation funds for household and medical expenses. Mrs. Strickland was listed as a joint account holder in case Mr. Strickland faced further health issues and was unable to access needed funds himself. The Stricklands proceeded to use these funds for basic living and healthcare expenses.

In August 2011, Mr. Strickland's health issues also qualified him to receive Social Security disability benefits. He arranged to have the Social Security Administration deposit those funds in a checking account at a separate institution.

Meanwhile, on December 4, 2009, Discover Bank ("Discover"), represented by the law firm of Greene & Cooper, LLP ("G & C"), sued Mr. Strickland for the unpaid credit card debt in the State Court of Fulton County, Georgia. Stipulation [Doc. 88–1], Ex. A. On April 4, 2012, Discover obtained a default judgment (the "Judgment") against Mr. Strickland in the principal amount of $13,849.93, plus interest of $2,138.64, attorney's fees of $1,613.61, and court costs of $147.50. *Id.*, Ex. B.

On July 6, 2012, G & C, on behalf of Discover, filed a garnishment action against Mr. Strickland in the State Court of Gwinnett County, Georgia, naming

---

1. The following facts are taken from the parties' Joint Stipulation of Undisputed Facts ("Stipulation") [Doc. 88] and plaintiff's Statement of Material Facts as to Which There Is No Genuine Issue to Be Tried ("Pl.'s Facts") [Doc. 93–2], which defendant does not dispute. *See* Def.'s Resp. to Pl.'s Facts [Doc. 96].

Chase as the garnishee and seeking $18,096.65 as the balance due on the Judgment. *Id.*, Ex. C. Defendant Richard T. Alexander, Clerk of Court for the State Court of Gwinnett County, generated a garnishment summons, which advised the garnishee to "hold all property, money and wages, except what is exempt ... belonging to the defendant." *Id.*, Ex. D. After being served with the garnishment summons on July 11, 2012, Chase immediately froze Mr. Strickland's savings account, which contained $15,652.67 in workers' compensation benefits.

On July 16, 2012, Mr. Strickland received a certified letter from G & C notifying him of the garnishment action. *Id.*, Ex. G. The notice, however, did not inform Mr. Strickland that some forms of property were exempt from garnishment, nor did it inform him how to claim such an exemption. On the same day, Mr. Strickland also received a letter from Chase. *Id.*, Ex. J. The letter advised him that the bank had been served with a writ of garnishment and that his bank account had been frozen. The letter also explained that some forms of income, including workers' compensation benefits, may be protected from garnishment depending on where Mr. Strickland lived, but it did not advise him how to claim an exemption. Instead, the letter merely advised Mr. Strickland to contact the judgment creditor's attorney if he believed that his money was exempt from the garnishment process. No other notices about the garnishment action were sent to Mr. Strickland.

After receiving the letters from G & C and Chase, Mr. Strickland went to his local bank branch to inquire about the garnishment. There, Mr. Strickland learned that the entirety of what remained of his workers' compensation funds had been frozen, and he was again advised that he should contact the judgment creditor if he believed the garnishment to be in error.

On July 17, 2012, Mr. Strickland contacted G & C, but he was unable to convince them to release the garnishment. When Mr. Strickland hung up the phone after the conversation with G & C, he was so upset that he could not speak, and he began to feel nauseated. Not knowing what the family could do or how the family would be able to afford the remaining household expenses for the month, he began to cry and shake.

By the end of July 2012, Mr. Strickland was out of money and could not afford to refill his Rythmol prescription. Despite his understanding of the dangers of not taking the medication, which included the possibility of a stroke or the need for shock therapy, he had to skip doses. The danger of skipping the medication took an emotional toll on Mr. Strickland. He lost his appetite, became a quiet person, and felt like he had let his family down.

On August 20, 2012, Chase filed an answer in the garnishment action and paid the entire balance of Mr. Strickland's accounts, totaling $15,652.67, into court. Stipulation [Doc. 88–1], Ex. K. These funds consisted entirely of workers' compensation benefits. Defendant Alexander was responsible for the administration of these funds once they were paid into court.

On August 28, 2012, Mr. Strickland, through his attorney Marsha Kleveckis of Gwinnett Legal Aid, sent an email to G & C explaining that the funds in Mr. Strickland's Chase bank account were exempt workers' compensation settlement funds. *Id.*, Ex. L. Ms. Kleveckis, however, was unable to resolve the matter with G & C.

On September 4, 2012, Ms. Kleveckis, on behalf of Mr. Strickland, filed a Claim for Funds Paid Into Court in the garnishment action. *Id.*, Ex. M. The claim asserted

that Mr. Strickland had a superior claim to the funds because they were workers' compensation benefits protected from garnishment under O.C.G.A. § 34-9-84. On October 10, 2012, Discover filed a Notice of Opposition to Mr. Strickland's claim. *Id.*, Ex. O. The court scheduled a hearing on the claim for October 24, 2012. *Id.*, Ex. P.

Meanwhile, sometime in October 2012, Mr. Strickland developed a blood clot in his hand that required surgery. Because his workers' compensation funds were still in court, he did not know how to pay for the surgery, so Mr. Strickland had to delay scheduling it. During this time, Mr. Strickland lost sleep, lost his appetite, and again began to cry because of the emotional toll of not being able to afford needed medical care. After his hand became so swollen that he could not use it and turned black all the way up to his elbow, the Stricklands decided to schedule the surgery and worry about payment afterwards.

On October 23, 2012, the day before the scheduled hearing on Mr. Strickland's claim, Discover dismissed the garnishment action. *Id.*, Ex. Q. The next day, the court entered an order releasing the deposited funds to Mr. Strickland, and on October 29, 2012, the State Court of Gwinnett County issued a check to Mr. Strickland in the amount of his seized workers' compensation funds, $15,652.67. *Id.*, Ex. R. Mr. Strickland's attorney received the check on November 2, 2012, nearly four months after his account had initially been frozen by Chase as a result of the garnishment action.

*Procedural History*

On August 8, 2012, while the garnishment action was still pending in the State Court of Gwinnett County, Mr. Strickland, through attorneys with the Atlanta Legal Aid Society, filed this action against defendant Alexander, Discover, G & C, and Chase challenging the constitutionality of certain provisions of Georgia's post-judgment garnishment statute and seeking declaratory and injunctive relief as well as compensatory and punitive damages. Mr. Strickland asserted two claims against defendants: one under 42 U.S.C. § 1983 for acting under color of state law and unconstitutionally depriving him of his property in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution, and one under the Georgia Bill of Rights for depriving him of his property in violation of the Due Process Clause of the Georgia Constitution.

Specifically, Mr. Strickland alleged that at least three aspects of the garnishment statute violated due process requirements under both the United States and Georgia Constitutions. Compl. [Doc. 4] ¶¶ 45, 52. First, Mr. Strickland alleged that by not requiring notice of available statutory exemptions from garnishment, O.C.G.A. § 18-4-64 failed to conform with due process notice requirements. Second, Mr. Strickland alleged that by not providing a debtor with a prompt procedure to claim an exemption and obtain return of the protected property, the structure of the garnishment process failed to conform with due process timeliness requirements. Finally, Mr. Strickland alleged that by not requiring any notice to a debtor that a garnishee has filed an answer, even though the debtor has only 15 days to traverse that answer and file an exemption claim, O.C.G.A. § 18-4-83 failed to conform to due process notice requirements.

Mr. Strickland asked the Court to declare these aspects of the law unconstitutional and enter appropriate injunctive relief (1) against defendant Alexander requiring due process and restraining the unconstitutional features of the statute, (2) against defendants Discover and G & C restraining their use of the unconstitutional garnishment process against his

property, and (3) against defendant Chase restraining it from unduly freezing his bank account containing exempt funds and its use of the unconstitutional garnishment process. *Id.*, Prayer for Relief ¶¶ (a)-(d). In addition, Mr. Strickland sought an award of actual, nominal, and punitive damages from defendants Discover, G & C, and Chase, as well as recovery of his attorneys' fees and litigation expenses. *Id.* ¶¶ (e)-(f).

On August 30, 2012, pursuant to Fed. R.Civ.P. 5.1 and O.C.G.A. § 9-47(c), Mr. Strickland filed and served on Georgia Attorney General Samuel S. Olens a Notice of Constitutional Question, noting that his complaint questioned the constitutionality of the statutory framework of Georgia's post-judgment garnishment scheme, O.C.G.A. § 18-4-60 *et seq.* [Doc. 6]. On September 14, 2012, pursuant to 28 U.S.C. § 2403 and Fed.R.Civ.P. 5.1(b), the Court certified that O.C.G.A. § 18-4-60 *et seq.* had been questioned and, pursuant to Fed. R.Civ.P. 5.1(c), notified Attorney General Olens that he could intervene in the action within 60 days [Doc. 11]. On November 13, 2012, Attorney General Olens responded that, after review, he had determined that he would not intervene, but that he would monitor the case and might file an amicus brief addressing the constitutional challenge if he believed it would be beneficial to the Court [Doc. 38].

On November 27, 2012, Mr. Strickland and Discover filed a consent motion to dismiss Discover with prejudice pursuant to a settlement agreement [Doc. 40]. Discover filed a satisfaction of judgment in the garnishment proceeding the same day and in the State Court of Fulton County on December 4, 2012. On November 28, 2012, the Court entered an Order granting the consent motion and dismissing Mr. Strickland's claims against Discover with

prejudice, leaving Mr. Alexander, G & C, and Chase as defendants.

Meanwhile, on September 20, 2012, G & C and Chase each filed a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief could be granted [Doc. 12 & Doc. 16]. On April 11, 2013, the Court entered an Order granting Chase's motion and granting in part and denying in part G & C's motion [Doc. 50]. The Court found that Mr. Strickland lacked standing to seek declaratory or injunctive relief because the possibility of future injury was too speculative. Order at 18-26. Even though defendant Alexander had not filed a motion to dismiss, since Mr. Strickland sought only injunctive relief against him, the Court *sua sponte* dismissed Mr. Strickland's claims against Mr. Alexander as well. *Id.* at 27-28.

As for plaintiff's damages claims against Chase and G & C, the Court found that Chase was entitled to dismissal because it was not acting under color of state law when it froze Mr. Strickland's account and transferred the funds to the state court. *Id.* at 28-39. On the other hand, the Court found that G & C's joint participation with state officials in filing and pursuing the garnishment action was sufficient to characterize it as a state actor for purposes of the Fourteenth Amendment and 42 U.S.C. § 1983. *Id.* at 39-42. Finally, the Court found that Mr. Strickland had asserted plausible claims that the post-judgment garnishment process violated due process timeliness and notice requirements and had thus stated a viable claim for damages against G & C. *Id.* at 43-58.

On July 19 and August 23, 2013, respectively, Mr. Strickland and G & C filed cross-motions for summary judgment on Mr. Strickland's remaining damages claims [Doc. 57 & Doc. 60]. On October 29, 2013,

the Court entered an Order denying Mr. Strickland's motion and granting G & C's motion [Doc. 71]. The Court rejected G & C's arguments that Mr. Alexander lacked standing because he had suffered no injury, and that his claim was moot because his funds had been returned to him. Order at 11–16. However, assuming the post-judgment garnishment statute was unconstitutional, the Court concluded that G & C had acted in good faith when it instituted garnishment proceedings against Mr. Strickland pursuant to the statute and therefore could not be held liable for his damages. *Id.* at 16–24.

Mr. Strickland appealed the Court's dismissal of his claims against defendant Alexander only. On November 20, 2014, the court of appeals reversed. *Strickland v. Alexander,* 772 F.3d 876 (11th Cir.2014). The court held that Mr. Strickland had standing to seek declaratory and injunctive relief against defendant Alexander because (1) the circumstances alleged in the complaint created "a 'real and immediate' likelihood of future injury," [2] (2) any future injury would be "fairly traceable" to defendant Alexander's following the procedures set out in Georgia's post-judgment garnishment statute, and (3) the injury would be redressed by a favorable court decision declaring the garnishment process unconstitutional and enjoining any future similar actions that lacked adequate due process protections. *Id.* at 883–86. The court further held that the return of Mr. Strickland's previously garnished funds by the State Court of Gwinnett County and the satisfaction of his debt to Discover did not moot his claim against defendant Alexander because the "capable of repetition, yet evading review" exception to the mootness doctrine applied. *Id.* at 886–88. Finally, to ensure that all interested parties, including Georgia's Attorney General, had notice and, if desired, a chance to present evidence and argument on the constitutional issues, the court remanded the case to this Court for further proceedings to evaluate the constitutionality of the challenged portions of Georgia's post-judgment garnishment statute. *Id.* at 888–89.

Following remand, the Court entered a consent scheduling order under which the parties were to file cross-motions for summary judgment based on stipulated facts [Doc. 87]. In accordance with the scheduling order, the parties filed their respective motions for summary judgment on April 30, 2015. On the same date, the State of Georgia, through Attorney General Olens, filed a motion to intervene [Doc. 89], and the Court entered an Order granting the motion and allowing the State of Georgia to present evidence and argument on the constitutionality of Georgia's post-judgment garnishment statute [Doc. 91]. Briefing of the motions for summary judgment by the parties and the State of Georgia is now complete and the case is ripe for decision.

*Summary Judgment Standard*

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate when "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91

---

**2.** In making this finding, the court cited the allegation that Mr. Strickland and his wife subsist on a very modest income consisting only of his disability benefits, so they are very unlikely to satisfy their outstanding debts in the near future; and the allegation that the Stricklands have judgments against them from creditors other than Discover and a second bank account containing exempt funds at a bank other than Chase, so the fact that Discover and Chase now know the Stricklands' funds are exempt does not make future garnishment actions unlikely. *Strickland,* 772 F.3d at 885.

L.Ed.2d 265 (1986), the Supreme Court held that this burden could be met if the movant demonstrates that there is "an absence of evidence to support the non-moving party's case." *Id.* at 325, 106 S.Ct. 2548. At that point, the burden shifts to the non-moving party to go beyond the pleadings and present specific evidence giving rise to a triable issue. *Id.* at 324, 106 S.Ct. 2548.

In reviewing a motion for summary judgment, the Court must construe the evidence and all inferences drawn from the evidence in the light most favorable to the non-moving party. *WSB–TV v. Lee*, 842 F.2d 1266, 1270 (11th Cir.1988). Nevertheless, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis in original).

■ The Rule 56 standard is not affected by the filing of cross-motions for summary judgment: "The court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard." 10A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2720 at 33536 (3d ed.1998). Cross-motions may, however, be probative of the absence of a factual dispute where they reflect general agreement by the parties as to the controlling legal theories and material facts. *See United States v. Oakley*, 744 F.2d 1553, 1555 (11th Cir.1984).

### Discussion

Plaintiff moves for summary judgment on his claims that Georgia's post-judgment garnishment statute violates constitutional due process requirements because it (1) does not provide judgment debtors with adequate notice that their property may be exempt from garnishment; (2) fails to inform debtors of the process to claim such exemptions; and (3) establishes a process that deprives debtors of their exempt property for an unconstitutionally long period of time. Defendant, on the other hand, supported by the State of Georgia, contends that he is entitled to summary judgment on each of these claims because (1) due process does not require that judgment debtors be notified of available exemptions or of a process to claim such exemptions, and (2) the claims process provided under the Georgia statute does not guarantee that an erroneous deprivation of exempt property will last longer than constitutionally permissible.

Before addressing the constitutional issues raised, the Court briefly describes the operation of Georgia's post-judgment garnishment statute. The Court then considers whether each of the challenged aspects of the law comports with due process requirements.

### I. Operation of Georgia's Post–Judgment Garnishment Statute

A plaintiff creditor who obtains a money judgment against a defendant debtor may file a garnishment action against a third party (the garnishee) to subject any debt that the garnishee owes to the debtor to payment of the judgment. O.C.G.A. §§ 18–4–20(b) & 18–4–60. "A creditor typically uses garnishment to reach two types of debts that a third party owes to an individual judgment debtor: an employer's debt for earnings due to an employee and a debtor's account with a bank or similar financial institution, which is a debt payable to the depositor or her order." *In re Johnson*, 479 B.R. 159, 167–68 (Bankr. N.D.Ga.2012) (footnote omitted).

A judgment creditor initiates a garnishment action by filing an affidavit of garnishment in any court with jurisdiction over the garnishee. O.C.G.A. § 18–4–61. After determining that the affidavit contains the statutorily required information, the clerk of court issues a summons of garnishment directed to the garnishee. *Id.* The summons commands the garnishee to file an answer not sooner than 30 days and not later than 45 days after service of the summons "stating what money or other property is subject to garnishment." O.C.G.A. § 18–4–62(a). The answer must be accompanied by the money or other property subject to garnishment. *Id.; see also* O.C.G.A. §§ 18–4–82 & 18–4–84. The garnishee must serve a copy of the answer on the judgment creditor; however, there is no requirement that a copy of the answer be served on the judgment debtor. O.C.G.A. § 18–4–83.

The creditor must give notice of the garnishment action to the judgment debtor by either formally serving him with a copy of the summons of garnishment or sending him written notice by other specified means consisting either of a copy of the summons of garnishment or of a document that "includes the names of the plaintiff and the defendant, the amount claimed in the affidavit of garnishment, a statement that the garnishment against the property and credits of the defendant has been or will be served on the garnishee, and the name of the court issuing the summons of garnishment." O.C.G.A. § 18–4–64(a) & (c). There is no requirement that the judgment debtor be notified that certain money or property may be exempt from garnishment.

After receiving notice of the garnishment action, the judgment debtor "may challenge the existence of the judgment or the amount claimed due thereon" or "any other matter in bar of the judgment," except the validity of the judgment, by filing a traverse of the creditor's affidavit "stating that the affidavit is untrue or legally insufficient." O.C.G.A. §§ 18–4–65(a), 18–4–93. The judgment debtor is entitled to a hearing within 10 days after filing the traverse, and "no further summons of garnishment may issue nor may any money or other property delivered to the court as subject to garnishment be disbursed until the hearing shall be held." O.C.G.A. § 18–4–93.

After the garnishee serves its answer on the plaintiff creditor, the creditor or another "claimant" has 15 days to file a traverse stating that "the garnishee's answer is untrue or legally insufficient." O.C.G.A. §§ 18–4–85, 184–86. If no traverse is filed within 15 days after service of the garnishee's answer, the clerk must pay any money delivered to the court by the garnishee to the plaintiff creditor, and the garnishee is automatically discharged from further liability. O.C.G.A. §§ 18–4–85, 18–4–89(1).

In addition, prior to entry of judgment on the garnishee's answer or distribution of any money or property subject to garnishment, "any person may file a claim in writing under oath stating that he has a claim superior to that of the plaintiff to the money or other property in the hands of the garnishee subject to the process of garnishment; and the claimant shall be a party to all further proceedings upon the garnishment." O.C.G.A. § 18–4–95. The court must retain the money or property subject to garnishment until trial of any such claims. O.C.G.A. § 18–4–88.

## II.  Notice of Available Exemptions

Due process requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust*

*Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950). Plaintiff contends that Georgia's garnishment statute fails to satisfy this requirement because the notice it requires does not inform the judgment debtor of available exemptions. Plaintiff relies on a long line of cases beginning with the Third Circuit's decision in *Finberg v. Sullivan,* 634 F.2d 50 (3rd Cir. 1980) (en banc). In *Finberg,* the court held that Pennsylvania's post-judgment garnishment law violated due process notice requirements because it did not inform the judgment debtor of exemptions that might apply to her property. 634 F.2d at 61–62; *see also Aacen v. San Juan Cnty. Sheriff's Dep't,* 944 F.2d 691, 699 (10th Cir.1991) (" "[T]he Constitution requires, at a minimum, that the debtor be informed that various state exemptions as to certain real and personal property exist and, if an incomplete list is given, state that the list is partial and advise the debtor regarding discovery of unlisted exemptions.") (footnote omitted); *Reigh v. Schleigh,* 784 F.2d 1191, 1196 (4th Cir. 1986) ("notice [must] alert the judgment debtor that there are certain exemptions under state and federal law which the debtor may be entitled to claim with respect to the attached property") (internal quotation marks omitted); *Dionne v. Bouley,* 757 F.2d 1344, 1354 (1st Cir.1985) (same); *McCahey v. L.P. Investors,* 774 F.2d 543, 549 (2nd Cir.1985) (due process requires "notice to judgment debtors of exemptions to which they may be entitled").

Defendant and the State of Georgia contend that this case is controlled by the Supreme Court's decision in *Endicott–Johnson Corp. v. Encyclopedia Press, Inc.,* 266 U.S. 285, 45 S.Ct. 61, 69 L.Ed. 288 (1924). In that case, the Supreme Court held that due process did not require notice and an opportunity to be heard before issuance of a writ to garnish a judgment debtor's wages. The Court reasoned that the judgment debtor "has had his day in court" in the underlying action on the merits, and "after the rendition of the judgment he must take notice of what will follow, no further notice being necessary to advance justice." *Id.* at 288, 45 S.Ct. 61 (internal quotation marks omitted). Under *Endicott–Johnson,* defendant and the State argue, *"no notice* beyond the underlying judgment itself is necessary to afford due process." Br. in Support of Def.'s Mot. for Summ. J. [Doc. 90–1] at 2 (emphasis in original); *see also* State of Ga.'s Br. in Opp'n to Pl.'s Mot. for Summ. J. & in Support of Def.'s Mot. for Summ. J. ("State's Br.") [Doc. 98] at 2. Because Georgia's statute goes further and provides the judgment debtor with notice of the garnishment action, defendant and the State contend that it exceeds minimum due process notice requirements.

With regard to the more recent *Finberg* line of cases, defendant and the State argue that they are merely persuasive authority to which this Court is not bound and which this Court should not follow. They also contend that these cases do not establish a clear rule that due process requires specific notice of what statutory exemptions from garnishment exist. Finally, they point out that the Georgia courts have repeatedly upheld the constitutionality of the current post-judgment garnishment scheme.

■ The Court concludes that *Endicott–Johnson* is not controlling in this case, and that the overwhelming weight of authority establishes that, in a garnishment action, due process requires that a judgment debtor receive notice that there are certain exemptions under state and federal law which the debtor may be entitled to claim with respect to the garnished property. Because the Georgia post-judgment

garnishment statute requires no such notice to the judgment debtor, it is constitutionally deficient.

An unbroken line of modern court decisions, including a decision by the former Fifth Circuit, holds that *Endicott–Johnson* is not controlling in cases challenging the constitutional sufficiency of notice and hearing procedures in post-judgment garnishment proceedings. *See Brown v. Liberty Loan Corp. of Duval*, 539 F.2d 1355, 1365 (5th Cir.1976) ("More recent decisions of the Supreme Court [than *Endicott–Johnson*] establish the need to balance various interests in order to determine whether due process requires notice and an opportunity for a hearing whenever an individual is to be deprived of property permanently or temporarily.") (citations omitted);[3] *see also Aacen*, 944 F.2d at 695 ("*Endicott* is not dispositive of this case."); *McCahey*, 774 F.2d at 548 ("[S]ubsequent Supreme Court decisions have implied that *Endicott* is not the last word on the subject [of due process limits on post-judgment remedies]."); *Dionne*, 757 F.2d at 1351 ("[*Endicott–Johnson's*] expansive language is no longer the law given the more recent Supreme Court precedent in the area of property sequestrations and due process.") (footnote omitted); *Duranceau v. Wallace*, 743 F.2d 709, 711 n. 1 (9th Cir.1984) ("[T]he series of [Supreme Court] cases reexamining the pre-judgment seizure of property by an alleged creditor" indicates "that the 'established rules of our system of jurisprudence' have changed since *Endicott*.") (quoting *Endicott–Johnson*, 266 U.S. at 288, 45 S.Ct. 61) (citations omitted); *Finberg*, 634 F.2d at 57 ("[A] series of more recent decisions by the Supreme Court adopts a different line of reasoning [than *Endicott–Johnson*].")[4]

■ These cases have universally employed the balancing analysis summarized in *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), to determine whether post-judgment garnishment procedures satisfy due process requirements. *See Aacen*, 944 F.2d at 695–96; *McCahey*, 774 F.2d at 548–49; *Dionne*, 757 F.2d at 1352; *Duranceau*, 743 F.2d at 711; *Finberg*, 634 F.2d at 58; *Brown*, 539 F.2d at 1365–69. Under that analysis, the court considers three distinct factors:

First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the fiscal and admin-

---

**3.** Contrary to the State's argument, the *Brown* decision is not "rooted in *Endicott*." State's Br. [Doc. 98] at 7. Instead of applying *Endicott–Johnson's* holding that no notice to the judgment debtor beyond the underlying judgment was necessary to satisfy due process, the *Brown* court utilized a balancing analysis derived from more recent Supreme Court decisions. 539 F.2d at 1365. The court concluded that the law adequately protected the debtor's interests primarily because, after the writ of garnishment issued, it provided for "prompt judicial determination of the debtor's claim to an exemption." *Id.* at 1368. *Endicott–Johnson*, on the other hand, required no balancing of creditor and debtor interests and evinced no concern with the

debtor's ability to enforce exemptions, which were virtually nonexistent at the time.

**4.** In departing from *Endicott–Johnson*, these cases relied on four prejudgment seizure cases in which the Supreme Court held that due process required "a constitutional accommodation of the respective interests" of the creditor and debtor. *Mitchell v. W.T. Grant Co.*, 416 U.S. 600, 610, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974); *see also N. Ga. Finishing, Inc. v. Di-Chem, Inc.*, 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975); *Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); *Sniadach v. Family Fin. Corp.*, 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969).

istrative burdens that the additional or substitute procedural requirements would entail.

*Mathews*, 424 U.S. at 335, 96 S.Ct. 893 (citation omitted).

Chief among the cases applying the *Mathews* balancing analysis to post-judgment garnishment proceedings is the Third Circuit's decision in *Finberg v. Sullivan*. The *Finberg* court noted that the judgment creditor has "a strong interest in a prompt and inexpensive satisfaction of the debt," but that the judgment debtor has a countervailing interest in access to a bank account which "may well contain the money that a person needs for food, shelter, health care, and other basic requirements of life." 634 F.2d at 58. Considering "the additional fact that the money in the accounts may, as here, be covered by exemptions designed to protect a debtor's means of purchasing basic necessities," the court found that "the debtor's interest in access to a bank account becomes very compelling." *Id.* Since "[k]nowledge of these exemptions is not widespread, and a judgment debtor may not be able to consult a lawyer before the freeze on a bank account begins to cause serious hardships," the court found that "[n]otice of these matters can prevent serious hardship for the judgment debtor whose lack of information otherwise would cause delay or neglect in filing a claim of exemption." *Id.* at 62. Considering that "[t]he conveyance of this information would not place a great burden on the state," and that "[t]he creditor would not have to incur any additional expense or delay," the court concluded that "the failure to provide [the judgment debtor] with this information was a violation of due process." *Id.* Subsequent circuit court decisions to consider this issue have agreed with *Finberg* that due process requires that judgment debtors in garnishment proceedings be notified of the existence of statutory exemptions to garnish-

ment. *See Aacen*, 944 F.2d at 697–98; *Reigh*, 784 F.2d at 1196; *McCahey*, 774 F.2d at 549; *Dionne*, 757 F.2d at 1354.

Apart from their misplaced reliance on *Endicott–Johnson*, defendant and the State offer little in the way of support for their argument that Georgia's post-judgment garnishment statute satisfies due process notice requirements. Quoting *McCahey*, 774 F.2d at 550, defendant argues that "judgment debtors are in the best position to provide evidence of exemption and may legitimately be required to carry the burden of proving the existence thereof." Def.'s Br. in Support of Mot. for Summ. J. [Doc. 90–1] at 12. The *McCahey* court's statement, however, was made in the context of rejecting the suggestion that judgment creditors should be required to swear ignorance of any possible exemptions and does not imply that judgment debtors need not receive notice of exemptions in garnishment proceedings. In fact, the *McCahey* court expressly agreed with *Finberg* and other cases that such notice was constitutionally required because it struck "a fair balance between the competing interests." 774 F.2d at 549.

Defendant also points out that the Fourth Circuit in *Reigh*, following the First Circuit's decision in *Dionne* and the dissents in *Finberg*, held that "due process does not mandate that the notice to the judgment debtor of the attachment should include a list of all the exemptions possibly available to the judgment debtor." *Reigh*, 784 F.2d at 1196. Instead, "it is sufficient that the notice alert the judgment debtor 'that there are certain exemptions under state and federal law which the debtor may be entitled to claim with respect to the attached property....'" *Id.* (quoting *Dionne*, 757 F.2d at 1354). *Reigh* and *Dionne*, however, agree with the basic principle established in *Finberg* that some

notice of exemptions is constitutionally required. The only disagreement is as to the level of specificity that this notice must have. Because the Georgia statute does not require *any* notice, either general or specific, it is clearly unconstitutional regardless.[5]

■ Defendant also argues that plaintiff received notice of the existence of exemptions because the affidavit of garnishment referred to property held by the garnishee "except what is exempt," and the letter plaintiff received from Chase advised him that some forms of property might be exempt from garnishment. Stipulation [Doc. 88–1], Exs. C & J. This argument, however, ignores the fact that plaintiff never received a copy of the affidavit of garnishment—or of the summons of garnishment, which also refers to property that is "exempt," *id.*, Ex. D—because the Georgia statute does not require these documents to be served on the judgment debtor. Instead, in accordance with O.C.G.A. § 18–4–64(c), the only notice plaintiff received informed him simply of the fact that a garnishment action had been or would be filed against his property and served on Chase, the name of the plaintiff and the defendant and the court issuing the garnishment, and the amount claimed due. *Id.*, Ex. G. It made no mention of exemptions. The fact that, in this case, Chase voluntarily sent plaintiff a letter that mentioned possible exemptions does not satisfy the State's duty to require that adequate notice of exemptions be sent to all judgment debtors.[6]

Finally, defendant and the State point out that the Georgia Supreme Court and the Georgia Court of Appeals have repeatedly upheld the constitutionality of the current form of Georgia's post-judgment garnishment statute. Br. in Support of Def.'s Mot. for Summ. J. [Doc. 90–1] at 16 (citing *Antico v. Antico,* 241 Ga. 294, 244 S.E.2d 820 (1978); *Easterwood v. LeBlanc,* 240 Ga. 61, 239 S.E.2d 383 (1977); *Apex Supply Co. v. Johnny Long Homes, Inc.,* 143 Ga.App. 699, 240 S.E.2d 171 (1977); *Morgan v. Morgan,* 156 Ga.App. 726, 275 S.E.2d 673 (1980)); State's Br. [Doc. 98] at 8 (citing *Antico, Easterwood,* and *Black v. Black,* 245 Ga. 281, 264 S.E.2d 216 (1980)). None of these cases, however, raised the issues of notice and timeliness regarding exemptions and claim procedures that are presented in this case. Therefore, they

---

**5.** The Court agrees that a potentially confusing "laundry list" of *all* available exemptions "is not likely to increase the probability of a debtor's correcting an erroneous deprivation," and therefore "is not required by due process." *Harris v. Bailey,* 574 F.Supp. 966, 971 (W.D.Va.1983) (citation omitted). However, the notice should include at least a partial list of "those essential federal and state exemptions that provide the basic necessities of life for someone in [Mr. Strickland's] position." *Id.* This would certainly include the exemption for workers' compensation benefits, as well as the Social Security exemption. "Beyond this list of absolutely essential exemptions ..., the debtor should be informed simply that other possible exemptions exist under the law." *Id.* (citation omitted); *see also Aacen,* 944 F.2d at 699 (notice may provide partial list of exemptions and advise debtor regarding discovery of unlisted exemptions); *McCahey,* 774 F.2d at 546, 550–52 (notice to judgment debtor providing expressly partial list of nine exemptions, including Social Security and workers' compensation benefits, was constitutional). "Such a requirement balances the debtor's need for notice that exemptions exist with the very real danger that information overload will only confuse the debtor." *Harris,* 574 F.Supp. at 971.

**6.** In addition, Chase's letter itself was constitutionally deficient because it merely advised Mr. Strickland to contact Discover's attorney if he believed his funds were exempt and did not inform him that there was a procedure to claim an exemption. *See* discussion in Section III *infra.*

offer no support for the constitutionality of these aspects of the statute.

### III. Notice of Procedure to Claim Exemption

■ "Notice ... does not comport with constitutional requirements when it does not advise the [debtor] of the availability of a procedure for protesting a [property deprivation]." *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 14–15, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978). Plaintiff contends that the post-judgment garnishment statute fails to satisfy this requirement because it does not inform the debtor of a procedure to claim an exemption. Plaintiff again relies on *Finberg* and its progeny, which uniformly hold that due process requires such notice. *See Aacen*, 944 F.2d at 699 ("Due process also requires some indication that a procedure exists to protect one's exempt property and how, in general, to trigger the process or to gain information regarding the process."); *Reigh*, 784 F.2d at 1196 (debtor is entitled to notice "that there is available a prompt procedure for challenging the attachment"); *McCahey*, 774 F.2d at 552 ("Notice that procedures exist to assert exemptions and a recommendation to seek legal counsel ... meet the constitutional standards for post-judgment remedies."); *Dionne*, 757 F.2d at 1352 ("[T]he debtor must receive and be notified of a timely opportunity to challenge any sequestration of his property which the law makes unattachable."); *Finberg*, 634 F.2d at 62 (failure to provide debtor with notice of the procedure for claiming exemptions was a violation of due process).

Defendant and the State again rely on *Endicott–Johnson* for the proposition that no notice to the debtor is required beyond the underlying judgment. In addition, defendant argues that a judgment debtor is put on notice of the procedure for claiming

an exemption in the underlying proceedings in which the judgment was obtained. Defendant also again argues that plaintiff received notice of the existence of exemptions in the affidavit of garnishment and Chase's letter, and "that he ought to make some effort to ascertain how to claim them." Def.'s Resp. in Opp'n to Pl.'s Mot. for Summ. J. [Doc. 95] at 5. Apart from *Endicott–Johnson*, the State argues that Georgia's post-judgment garnishment statute itself provides ample notice of the procedures and remedies available to a judgment debtor, so that no further notice is required.

■ The Court finds defendant's and the State's arguments without merit and concludes that the unbroken line of cases from *Finberg* on establishes that, in addition to notice of the existence of exemptions, due process requires that judgment debtors in garnishment actions be informed of the procedures for claiming an exemption. Because the Georgia statute requires no such notice, it is constitutionally deficient.

First, as discussed in the preceding section, the Supreme Court's decision in *Mathews v. Eldridge*, rather than *Endicott–Johnson*, provides the appropriate analytical framework for deciding what process is due in post-judgment garnishment proceedings. Using the *Mathews* balancing analysis, *Finberg* and every subsequent case to address the issue have concluded that due process requires that judgment debtors receive notice of the procedures available to claim an exemption from garnishment.

Second, defendant offers no support for his contention that the proceedings leading to the underlying judgment provide debtors with the requisite notice of procedures for claiming exemptions. The Court is aware of no authority, and defendant cites none, requiring that defendants in actions

seeking to recover a debt be informed of procedures for claiming exemptions if the plaintiff creditor should subsequently seek to collect a judgment by garnishing bank accounts or other property of the debtor.

Third, defendant's argument that debtors ought to be able to find out for themselves how to claim exemptions ignores the fact that the law does not require debtors to be notified that there even *are* exemptions. Debtors cannot be expected to find out how to claim what they do not even know exists. Even where, as here, the garnishee voluntarily informs the debtor of the possible availability of exemptions, it is not reasonable to expect an untutored layperson to be able to discover the procedures for making an exemption claim. As discussed below, even if the debtor were to examine the garnishment statute, he or she would find little, if any, guidance regarding how to assert such an exemption.

Finally, the State's argument that the garnishment statute itself provides all the notice necessary of the procedures for claiming an exemption is not supported by either the facts or the law. The words "exempt," "exemption," or "exempted" appear only six times in the Georgia statute: (1) in a section referring to the exemption of a portion of a debtor's wages, O.C.G.A. § 18-4-20(f); (2) in a section providing for the exemption of pension and retirement benefits, O.C.G.A. § 18-4-22; (3) in the form summons of garnishment and summons of continuing garnishment, which direct the garnishee to hold all property "except what is exempt," O.C.G.A. §§ 18-4-66(2) & 18-4-118(2); (4) in a section explaining how a garnishee can have a default judgment modified to exclude, in the case of garnishment of wages, "any exemption allowed the defendant by law,"

O.C.G.A. § 18-4-91; (5) in a section absolving the garnishee of liability for failing to deliver to the court property that is "exempted from garnishment." O.C.G.A. § 18-4-92.1(c)(2)(B); and (6) in a section providing that exemptions "required or allowed by law" are applicable to continuing garnishments, O.C.G.A. § 18-4-111(c). None of these provisions, however, says anything about how a debtor can assert a claim that seized property is exempt from garnishment.

The State argues that the Georgia postjudgment garnishment statute "clearly provides" procedures to claim an exemption in O.C.G.A. §§ 18-4-65(a) and 18-4-95. State's Br. [Doc. 98] at 12. Section 18-4-65(a) authorizes the debtor to challenge the existence or amount of the underlying judgment or "plead any other matter in bar of the judgment" by filing a traverse of the creditor's affidavit. O.C.G.A. § 18-4-65(a). Section 18-4-95 authorizes any person to file a claim asserting that "he has a superior claim to that of the plaintiff [creditor] to the money or other property in the hands of the garnishee." O.C.G.A. § 18-4-95. Neither section, however, either mentions "exemptions" or otherwise explains that it provides a procedure by which a debtor may claim an exemption. In fact, contrary to the State's argument, Code Section 18-4-65(a) clearly does not provide a procedure for claiming an exemption because such a claim does not challenge either the existence or the amount of the underlying judgment, nor is it a plea in bar of the judgment, which remains in effect and collectible even if an exemption claim is upheld; it simply cannot be collected against the exempt property.[7]

---

7. Even if a traverse of the creditor's affidavit provided a means to claim an exemption, the debtor would find it difficult to take advantage of the procedure because the Georgia statute does not require that debtor to be served with the affidavit.

As for Code Section 18–4–95, in *Terrell v. Fuller*, 160 Ga.App. 56, 286 S.E.2d 50 (1981), the Georgia Court of Appeals explained the complicated procedure a debtor must follow to assert an exemption under this provision. First, the debtor must become a "claimant" by filing a claim under Section 18–4–95 (former Ga.Code § 46–404) asserting that he has a claim to the garnished funds superior to that of the creditor. *Id.* at 58, 286 S.E.2d 50. Then, the debtor must file a traverse of the garnishee's answer under Section 18–4–86 (former Ga.Code § 46–505) asserting that the answer is untrue or legally insufficient. *Id.* Both the claim and the traverse must be filed within 15 days after the garnishee's answer is filed or the funds delivered to the court by the garnishee will be paid to the creditor and the garnishee will be "automatically discharged from further liability." O.C.G.A. §§ 18–4–85 & 18–4–89. Failure to strictly comply with this convoluted, two-step process, which is nowhere explained in the statute, will result in the debtor's exemption claim being forever barred by *res judicata*. *Terrell*, 160 Ga. App. at 58. The Court concludes that neither O.C.G.A. § 18–4–65(a) nor O.C.G.A. § 18–4–95 is reasonably calculated to provide effective notice to judgment debtors about how to assert their exemption rights.

The State's reliance on the Supreme Court's decision in *City of West Covina v. Perkins*, 525 U.S. 234, 119 S.Ct. 678, 142 L.Ed.2d 636 (1999), is misplaced. In that case, the Court held that due process did not require law enforcement officers who seized property pursuant to a search warrant to give the property owners "individualized notice of state-law remedies" for return of the seized property because such remedies were "established by published, generally available state statutes and case law." 525 U.S. at 241, 119 S.Ct. 678. *West Covina*, however, "does not

stand for the ... proposition that statutory notice is always sufficient to satisfy due process." *Grayden v. Rhodes*, 345 F.3d 1225, 1244 (11th Cir.2003). "The Court's opinion acknowledges a practical concern about the public's ability to learn of its rights," *id.*, and recognizes that, under its earlier decision in *Memphis Light*, "notice of the procedures for protecting one's property interests may be required when those procedures are arcane and are not set forth in documents accessible to the public." *West Covina*, 525 U.S. at 242, 119 S.Ct. 678.

This case is analogous to *Memphis Light*. In that case, the Court held that a utility was required to provide individualized notice to customers threatened with termination of their service where "no description of a dispute resolution process was ever distributed to the utility's customers" and no "written account of such a procedure was accessible to customers who had complaints about their bills." *Memphis Light*, 436 U.S. at 14 n. 14, 98 S.Ct. 1554. Similarly, in this case, the procedures for claiming an exemption from garnishment are not clearly set forth anywhere in Georgia's post-judgment garnishment statute. Nowhere does the statute even mention "exemptions" in connection with any procedure that is available to judgment debtors. Nor does the State cite any other publicly available document where this information may be found. Instead, as discussed above, the State relies on two statutory provisions as providing the requisite notice, one of which, by its terms, does not apply to exemption claims, and another that provides for the assertion of a "superior claim" to garnished property but does not expressly refer to exemptions and does not explain that the debtor must also traverse the garnishee's answer to avoid having his claim barred. *See* O.C.G.A. §§ 18–4–65(a) & 18–4–95; *Ter-*

*rell,* 160 Ga.App. at 58, 286 S.E.2d 50. For all practical purposes, therefore, the procedures for claiming an exemption from garnishment in Georgia "are arcane and are not set forth in documents that are accessible to the public." *West Covina,* 525 U.S. at 242, 119 S.Ct. 678. Under these circumstances, a judgment debtor who is informed that a garnishment action has been filed against his property, like the utility customer in *Memphis Light* who was informed that the utility planned to terminate his service, "could not reasonably be expected to educate himself about the procedures available to protect his interests." *Id.* Therefore, individualized notice of these procedures is constitutionally required.

The State also cites the Eleventh Circuit's decision in *Arrington v. Helms,* 438 F.3d 1336 (11th Cir.2006), but that case is distinguishable as well. In *Arrington,* the court held that a state agency administering child support payments to custodial parents was not required to provide the parents with individualized notice of their right to, and procedures for obtaining, a hearing because publicly available statutes, administrative rules, and agency policy manuals provided adequate notice. 438 F.3d at 1351–53. In reaching this conclusion, the court relied on a variety of circumstances. First, the court noted that three publicly available documents—a state statute, the state agency's administrative code, and the agency's policies and procedures manual—combined to notify parents of their right to a hearing and the procedures for obtaining one. *Id.* at 1352–53. In addition, the court pointed out that when the agency opened a child support case, it sent the parents a document alerting them to their right to a hearing, and that the parents could contact the agency's customer support unit and obtain a written statement explaining the right to appeal and how to exercise that right "without having to research [the state's] statutes, regulations, and agency policy manuals independently." *Id.* at 1353. Finally, the court noted that parents had 30 days after learning of an erroneous deprivation of child support payments to ascertain their rights and submit a request for a hearing. *Id.*

No comparable circumstances are present in this case. As discussed above, when a judgment debtor learns that his property has been seized in a garnishment action, he is confronted with nothing more than an arcane statute that nowhere explains how to go about asserting a claim of exemption. There is no publicly available administrative code and no policies and procedures manual that spells out his rights and how to enforce them. Nor is the debtor told whom he may contact to obtain this information. Instead, he is notified only that a creditor has filed or is about to file a garnishment action against his property, together with the identity of the garnishee, the amount claimed due, and the court issuing the garnishment. *See* O.C.G.A. § 18–4–64(c); Stipulation [Doc. 88–1], Ex. G. Meanwhile, funds that may be needed to pay daily living expenses, including for food, shelter, and medical care, are frozen and subject to being forfeited just fifteen days after the garnishee files its answer if the debtor does not somehow ascertain his rights and how to enforce them. Under these very different circumstances from those present in *Arrington,* individualized notice of the procedures available for claiming an exemption from garnishment is constitutionally required.

## IV. Timeliness of Procedure to Claim Exemption

"A fundamental requirement of due process is the opportunity to be heard ... at a meaningful time and in a meaningful

manner." *Armstrong v. Manzo,* 380 U.S. 545, 552, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965) (internal quotation marks and citation omitted). Applying this requirement in the context of post-judgment garnishment proceedings, some courts have held that a judgment debtor must be afforded a hearing on an exemption claim within a mandated time period of limited duration. *See Finberg,* 634 F.2d at 59 ("fifteen days is too long to deprive a person of money needed for food, shelter, health care, and other basic needs"); *Harris,* 574 F.Supp. at 971 (due process requires a prompt post-seizure hearing "within a mandated period of time"). Others have required a "prompt" or "expeditious" hearing on such claims without stating a specific time limit. *See Reigh,* 784 F.2d at 1199; *McCahey,* 774 F.2d at 553.

Plaintiff contends that Georgia's post-judgment garnishment statute not only fails to afford debtors a sufficiently prompt mechanism to resolve exemption claims, but that by relegating debtors to the generic claims procedure set out in O.C.G.A. § 18–4–95, the law guarantees that such claims will not be heard for an unconstitutionally long period of time. Under that procedure, plaintiff argues, a debtor cannot file a claim for exemption until the garnishee has answered and deposited the garnished property into court, which the garnishee is not permitted to do until at least 30 days after being served with the summons of garnishment. *See* O.C.G.A. § 18–4–62(a). Thereafter, plaintiff points out, the statute provides no time frame within which a hearing must be held nor any requirement that garnished property be promptly returned if an exemption claim is upheld.

Defendant and the State do not dispute that due process requires a prompt procedural mechanism for resolving exemption claims. Instead, they argue that the Georgia statute provides such a mechanism by authorizing the judgment debtor to file a traverse of the creditor's affidavit of garnishment, whereupon the court is required to hold a hearing within 10 days. *See* O.C.G.A. §§ 18–4–65(a) & 18–4–93.

The Court concludes that the Georgia statute violates due process because it does not provide for a prompt and expeditious procedure to resolve a debtor's claim that seized property is exempt from garnishment. Contrary to defendant's and the State's argument, the procedure for traversing the creditor's affidavit does not provide for an expeditious hearing of exemption claims. As discussed above, the Georgia statute expressly limits the grounds on which a debtor may traverse the creditor's affidavit to the "the existence of the judgment or the amount claimed due thereon" or "any other matter in bar of the judgment." O.C.G.A. § 18–4–65(a). A claim of exemption does not challenge either the existence or the amount of the judgment. Nor does it seek to "bar" the judgment, which remains in effect and collectible even if the exemption claim is successful; it simply cannot be collected against the exempt property.

The State argues that the traverse procedure was available to Mr. Strickland because all of the funds in his Chase bank account were exempt and, as a result, the creditor's affidavit could be found to be "legally insufficient." State's Br. [Doc. 98] at 16 (quoting O.C.G.A. § 18–4–93). But, as the statute makes clear, the term "legally insufficient" does not include exemption-based challenges but is limited to the grounds set out in Code Section 18–4–65. *See* O.C.G.A. § 18–4–93 (providing that the debtor "may become a party to the garnishment *for the purposes set out in Code Section 18–4–65* by filing a traverse to the plaintiff's affidavit stating that the affidavit is untrue or legally insufficient")

(emphasis added). The State relies on *Citizens Bank of Ashburn v. Shingler*, 173 Ga.App. 511, 326 S.E.2d 861 (1985), which upheld a trial court decision sustaining the debtor's traverse of the creditor's affidavit of garnishment on the basis that the individual retirement accounts in the garnishee's possession were exempt from garnishment. *Id.* at 512, 326 S.E.2d 861. In that case, however, no issue was raised regarding the appropriate procedure for asserting an exemption claim, and the court's one-page decision includes no discussion or analysis of Georgia's post-judgment garnishment statute. *Id.* Therefore, *Shingler* provides no authority for the State's interpretation of the statute, which is contrary to its plain terms.

Since the procedure for traversing the creditor's affidavit is not available, a debtor who contends that garnished property is exempt from garnishment must follow the generic claims procedure set out in Code Section 18–4–95. As discussed above, in accordance with the Georgia Court of Appeals' decision in *Terrell*, the debtor must first file a claim to the garnished funds and then file a traverse of the garnishee's answer under Code Section 18–4–86. *Terrell*, 160 Ga.App. at 58, 286 S.E.2d 50 ("[A] defendant ... who has a claim superior to that of the plaintiff to money or property in the hands of the garnishee ... must ... assert such a claim and then traverse the answer of the garnishee."). Obviously, the debtor cannot traverse the garnishee's answer until the answer has been filed, which the garnishee must do not less than 30 days, or more than 45 days, after service of the summons of garnishment. O.C.G.A. § 18–4–62(a). Thus, the debtor must wait at least 30 days, and perhaps as long as 45 days, after

his or her property has been seized before he or she can even assert an exemption claim.

Once the garnishee files its answer and deposits the garnished funds with the court, the debtor has 15 days to file a claim of exemption and a traverse or the funds will be paid to the creditor and the garnishee will be discharged from further liability. O.C.G.A. §§ 18–4–85 & 18–4–89. Despite this limited time frame, there is no requirement in the statute that the debtor be served with the garnishee's answer. Even if the debtor learns that the garnishee has filed its answer and manages to file a timely traverse and claim of exemption, there is no statutory requirement that the court conduct an expedited hearing. And even if the court ultimately upholds the debtor's exemption claim after a hearing, there is no requirement that the garnished property or funds be promptly returned to the debtor. *See* O.C.G.A. § 18–4–94. Whatever the outer constitutional time limit may be to resolve exemption claims, the delay inherent in this procedure far exceeds it.

This unconstitutional delay is well-illustrated by the facts of this case. Chase was served with the summons of garnishment on July 11, 2012, and immediately froze Mr. Strickland's bank account, which contained exempt workers' compensation benefits. In accordance with the Georgia statute, Chase filed its answer and paid the garnished funds into court on August 20, 2012, 40 days after being served with the summons. After unsuccessfully attempting to resolve the matter informally with Discover, Mr. Strickland, through counsel, filed a Claim for Funds on September 4, 2012.[8] However, the court did

---

8. There is no indication in the record that Mr. Strickland's counsel also filed a traverse of Chase's answer, and Discover initially assert-

ed that this failure barred Mr. Strickland's exemption claim. Stipulation [Doc. 88–1], Ex. O. Under the holding in *Terrell*, 160 Ga.

not schedule a hearing on the claim until October 24, 2012, more than seven weeks later. The day before the scheduled hearing, Discover dismissed the garnishment action. The following day, the court entered an order releasing the deposited funds to Mr. Strickland. But the court did not issue a check to Mr. Strickland until October 29, 2012, and Mr. Strickland's attorney did not receive the check until November 2, 2012. All together, therefore, Mr. Strickland was deprived of his exempt funds—money that he desperately needed to pay for everyday living expenses as well as urgent medical care—for a total of 115 days, or nearly four months. By any standard, this type of delay does not satisfy the Constitution's demand that debtors be afforded a prompt and expeditious procedure to correct potentially erroneous post-judgment deprivations of their property.

## V. Conclusion

The Court concludes that plaintiff is entitled to summary judgment on his claims that Georgia's post-judgment garnishment statute violates due process by failing to require that debtors be notified of the existence of exemptions which they may be entitled to claim with respect to the garnished property and of the procedure to claim such an exemption, and by failing to provide a timely procedure for adjudicating exemption claims. Accordingly, plaintiff is entitled to entry of final judgment in his favor declaring that the statute is unconstitutional in these respects and enjoining defendant Alexander from issuing any

summons of garnishment pursuant to the existing forms and procedures insofar as they are inconsistent with this decision. *See Dionne*, 757 F.2d at 1354 (affirming, as modified, injunction prohibiting state court clerk from issuing writs of attachment under constitutionally deficient procedures).

*Summary*

For the foregoing reasons, the Court DENIES defendant's motion for summary judgment [Doc. 90] and GRANTS plaintiff's motion for summary judgment [Doc. 93]. The Court DECLARES that Georgia's post-judgment garnishment statute, O.C.G.A. § 18–4–60 *et seq.*, is unconstitutional insofar as it (1) fails to require that judgment debtors be notified that there are certain exemptions under state and federal law which the debtor may be entitled to claim with respect to the garnished property; (2) fails to require that judgment debtors be notified of the procedure to claim an exemption; and (3) fails to provide a timely procedure for adjudicating exemption claims. The Court ENJOINS defendant Alexander from issuing any summons of garnishment pursuant to the existing forms and procedures insofar as they are inconsistent with this decision. The Clerk is DIRECTED to enter final judgment accordingly.

App. at 58, 286 S.E.2d 50, this defense might very well have succeeded if Discover had chosen to pursue it. If so, Mr. Strickland would have lost all of his exempt funds despite the legitimacy of his claim. Such a procedural trap for the unwary illustrates the risks that even debtors represented by counsel run in navigating the murky waters of Georgia's post-judgment garnishment statute.